ANN S. SHELTON AND ROBERT F. SHELTON, JR. v. MOREHEAD MEMORIAL HOSPITAL, LINDA T. ROSS, ADMINISTRATRIX OF THE ESTATE OF ROBERT J. ROSS, J.D., ROBERT P. SHAPIRO, M.D., STUART M. BERGMAN, M.D. AND THE BOARD OF TRUSTEES OF MOREHEAD MEMORIAL HOSPITAL, INCLUDING JOSEPH G. MADDREY, JOHN E. GROGAN, JAMES M. DALY, JR., ROY C. TURNER, JOYCE JOHNSON, WILLIAM O. STONE, JESSE L. BURCHELL, GARLAND S. EDWARDS, WILLIAM R. FRAZIER AND GERALD JAMES, INDIVIDUALLY, AND THE EXECUTIVE COMMITTEE OF THE MEDICAL STAFF OF MOREHEAD MEMORIAL HOSPITAL, INCLUDING SHELTON DAWSON, J.D., HENRY A. FLEISHMAN, M.D., EDWARD L. GROOVER, M.D., BARRY L. BARKER, M.D., DAVID LEE CALL, M.D., JOHN R. EDWARDS, M.D. AND JAMES B. PARSONS, M.D., INDIVIDUALLY

No. 563PA85

(Filed 29 August 1986)

1. **Evidence § 29.3; Hospitals § 3.2— medical review committee—no discovery of records**

   N.C.G.S. § 131E-95, which affords protection from discovery of the records and proceedings of a hospital's medical review committees, applies in actions against hospitals for corporate negligence, since the purpose of the statute, *i.e.*, the promotion of candor and frank exchange in peer review proceedings, would be thwarted if discovery were allowed; furthermore, it is not impossible for injured persons to hold hospitals accountable for their medical review committee's negligence, since information, in whatever form available, from original sources other than the medical review committee is not immune from discovery or use at trial merely because it was presented during medical review committee proceedings, nor should one who is a member of a medical review committee be prevented from testifying regarding information he learned from sources other than the committee itself, even though that information might have been shared by the committee.

2. **Hospitals § 3.2— board of trustees—no medical review committee**

   A hospital's board of trustees is not a medical review committee within the meaning of the Hospital Licensure Act.

3. **Evidence § 29.3; Hospitals § 3.2— chief executive officer—no member of medical review committee—records not immune from discovery**

   A chief executive officer of a hospital was not a member of a medical review committee so as to make documents in his possession and information known to him immune from discovery pursuant to N.C.G.S. § 131E-95.

4. **Evidence § 29.3— medical review committee records—immunity from discovery—no common law privilege**

   There was no merit to defendants' contention that any information or documents relating to peer reviews of the individual physicians not protected under N.C.G.S. § 131E-95 were immune from discovery and use as evidence under a common law privilege, since whatever common law privilege existed in North Carolina was codified in § 95.

**5. Evidence § 29.3— hospital records—extent of immunity from discovery**

In an action against defendant hospital for corporate negligence, the trial court erred in denying plaintiffs' motion to compel the corporate defendants to answer an interrogatory that defendants "identify and state the name, address and telephone number of the custodian" of certain documents, since the protection afforded by N.C.G.S. § 131E-95 is not compromised by merely identifying existing documents and giving pertinent information concerning their custodians, but it is the contents of the documents which the statute may or may not protect from discovery.

Justice MARTIN dissents.

ON defendants' and plaintiffs' petitions for further review of the Court of Appeals decision, 76 N.C. App. 253, 332 S.E. 2d 499 (1985), which affirmed in part and reversed in part an order of *Judge Morgan* entered 3 August 1984 in ROCKINGHAM County Superior Court.

*Graham, Cooke, Miles & Bogan by Donald T. Bogan for plaintiffs.*

*Tuggle, Duggins, Meschan & Elrod, P.A. by Joseph E. Elrod III; J. Reed Johnston, Jr. and Sally A. Lawing for defendants, Morehead Memorial Hospital, the Board of Trustees of Morehead Memorial Hospital (and various named individual members thereof) and the Executive Committee of the Medical Staff of Morehead Memorial Hospital (and various named individual members thereof).*

EXUM, Justice.

This is a medical malpractice action in which plaintiffs claim first that they were injured by the negligence of defendants, Drs. Robert J. Ross (now deceased) and Robert P. Shapiro. Second, plaintiffs claim that defendants Hospital, its Board of Trustees, and the Executive Committee of its Medical Staff were negligent in allowing Drs. Ross and Shapiro to continue to practice at the hospital after they knew or should have known that these physicians were not fit to practice medicine and had continuously failed to treat patients in accordance with ordinary standards of care pertaining to their profession. This is a claim for what has been called the "corporate negligence" of a hospital, which occurs when the hospital violates a duty owed directly by it to the patient. *Bost v. Riley*, 44 N.C. App. 638, 262 S.E. 2d 391 (1980). The case

involves whether and to what extent N.C.G.S. § 131E-95 pre-cludes discovery of various records which may be in the corporate defendants' possession relating to their knowledge of the com-petence of the individual physicians and various personnel in-vestigations and decisions which the corporate defendants might have made regarding the individual physicians' tenure at the hospital.

Judge Morgan, presiding in Rockingham County Superior Court, concluded that these records were privileged and could not be discovered. The Court of Appeals concluded that under N.C.G.S. § 131E-95 the records of the Medical Staff's Executive Committee were protected from discovery but the records of the Hospital's Board of Trustees were not. We modify and affirm the decision of the Court of Appeals.

I.

Plaintiffs allege in their complaint that on 5 January 1983 Dr. Ross, assisted by Dr. Shapiro, negligently performed on Mrs. Shelton a total hysterectomy. As a result of this alleged negli-gence, Mrs. Shelton had to undergo several additional surgical procedures, whereby she has suffered physically and mentally and incurred substantial expenses. Mr. Shelton's action is for loss of consortium due to the alleged injuries suffered by his wife. Plain-tiffs also allege the corporate defendants knew or should have known of the unfitness of Drs. Ross and Shapiro to practice their profession before Mrs. Shelton's surgery; yet these defendants failed to take appropriate corrective actions against their physi-cians.

In March 1984 plaintiffs served interrogatories upon the cor-porate defendants requesting them to identify, among other things, all records relating to personnel decisions, disciplinary in-vestigations, peer evaluations, credential and competence re-views, and patient complaints relating to Drs. Ross and Shapiro. In April 1984 plaintiffs requested production of these documents. Defendants filed objections to the interrogatories and the motion to produce on the ground the information requested was "not dis-coverable or admissible by virtue of North Carolina General Statute § 131E-95."

Having noticed the deposition of Amos Tinnell, a former chief executive officer of the hospital, plaintiffs in June 1984 issued a

subpoena duces tecum to Tinnell, directing him to produce at his deposition documents similar to those about which plaintiffs had inquired in their interrogatories and moved defendants to produce. Defendants, again relying on N.C.G.S. § 131E-95, moved for a protective order that plaintiffs not be permitted to question Tinnell so as to disclose "any matters considered or decided by any medical review committee." The motion also asked that the subpoena "requiring production of confidential material be stricken." Tinnell, himself, moved to quash the subpoena duces tecum on the grounds the documents sought from him were protected by N.C.G.S. § 131E-95.

Plaintiffs moved to compel the corporate defendants to answer the interrogatories relating to and produce the documents in question.

On 3 August 1984 Judge Morgan denied the motion to compel, quashed the subpoena duces tecum, and ordered that Tinnell not be questioned in his deposition regarding "any matters relating to the hospital's medical review processes, including the credentialing and investigation processes, except with the express permission of counsel for the hospital."

Judge Morgan also found that his rulings affected a substantial right of the plaintiff and that there was no reason for delay in obtaining appellate review of this order. See N.C.R. Civ. P. 54(b). Plaintiffs appealed, assigning error to the trial court's: (1) denying plaintiffs' motion to compel discovery; (2) ordering that Tinnell not be questioned about matters relating to the hospital's medical review processes; and (3) quashing the subpoena duces tecum issued to Tinnell.

The Court of Appeals, without discussing the appealability of the order, concluded first that under the Bylaws of the Medical and Dental Staff of Morehead Memorial Hospital, the Executive Committee of the Medical Staff was a "medical review committee," as defined by N.C.G.S. § 131E-76(5). The Court of Appeals also concluded that the trial court properly quashed the subpoena duces tecum and properly ordered that Tinnell not be questioned regarding his participation in the Executive Staff's review processes. Finally, the Court of Appeals held that documents and proceedings before the hospital's Board of Trustees were not protected from discovery under either N.C.G.S. § 131E-95 or the

common law. We allowed both parties' petitions for further review.

## II.

As to the appealability of Judge Morgan's rulings, we conclude his orders are interlocutory, do not affect a substantial right of the plaintiffs, and are not appealable of right. N.C.G.S. § 7A-27 (1986); *First Union Nat'l Bank v. Olive*, 42 N.C. App. 574, 257 S.E. 2d 100 (1979). Nevertheless, because of the significance of the legal issues involved, we have elected under our supervisory powers and Appellate Procedure Rule 2 to entertain the appeal.

## III.

[1] The statutes in question here are contained in the Hospital Licensure Act, codified as Article 5, Chapter 131E of the General Statutes.[1] The stated purposes of the Act are "to establish hospital licensing requirements which promote public health, safety and welfare and to provide for the development, establishment and enforcement of basic standards for the care and treatment of patients in hospitals." § 75. The Act defines "medical review committee" in pertinent part as "a committee . . . of a medical staff of a licensed hospital . . . which is formed for the purpose of evaluating the quality, cost of, or necessity for hospitalization or health care, including medical staff credentialing." § 76(5). Section 95 of the Act provides:

(a) A member of a duly appointed medical review committee who acts without malice or fraud shall not be subject to liability for damages in any civil action on account of any act, statement or proceeding undertaken, made, or performed within the scope of the functions of the committee.

(b) The proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential and not considered public records within the meaning of G.S. 132-1, 'Public records defined,' and shall not be subject to discovery or introduction into evidence in any civil action against a hospital or a provider of professional health services which results from matters

---

1. Since all statutes referred to will be in Chapter 131E, references will be only to section numbers in that chapter.

which are the subject of evaluation and review by the committee. No person who was in attendance at a meeting of the committee shall be required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any findings, recommendations, evaluations, opinions, or other actions of the committee or its members. However, information, documents, or records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee. A member of the committee or a person who testifies before the committee may testify in a civil action but cannot be asked about his testimony before the committee or any opinions formed as a result of the committee hearings.

§ 95.

The question before us is whether and to what extent section 95 of the Act prohibits discovery of the documents and testimony sought by plaintiffs through their interrogatories, motions to produce and compel discovery, and deposition of and subpoena duces tecum issued to Tinnell.

Plaintiffs concede that the Medical Staff's Executive Committee is a "medical review committee" as that term is used in the Act. Plaintiffs further concede that § 95 of the Act protects from discovery medical review committee proceedings which relate to the surgery forming the basis of plaintiffs' negligence claims against Drs. Ross and Shapiro. Plaintiffs argue, however, that proceedings of medical review committees which relate to plaintiffs' corporate negligence claims are not protected by § 95 because such claims do not result "from matters which are the subject of evaluation and review by the committee." Plaintiffs' argument is that when a claim is filed against the hospital itself, as a corporate entity, grounded in allegations of the hospital's own negligence in performing peer evaluations and reviews, § 95 affords no protection from discovery of the records and proceedings of the hospital's medical review committees. We disagree.

Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which

the statute seeks to accomplish. *Crumpler v. Mitchell*, 303 N.C. 657, 281 S.E. 2d 1 (1981); *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977). The statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently. *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614.

The stated purposes of the Hospital Licensure Act are to promote the public health, safety and welfare and to provide for basic standards for care and treatment of hospital patients. Section 95 of the Act protects from discovery and introduction into evidence medical review committee proceedings and related materials because of the fear " 'that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity. . . . [The Act] represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence.' " *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 436, 293 S.E. 2d 901, 914, *appeal dismissed and disc. rev. denied*, 307 N.C. 127, 297 S.E. 2d 399 (1982), *quoting Matchett v. Superior Court of Yuba County*, 40 Cal. App. 3d 623, 629, 115 Cal. Rptr. 317, 320-21 (1974).

It would severely undercut the purpose of § 95, *i.e.*, the promotion of candor and frank exchange in peer review proceedings, if we adopted plaintiffs' construction of the statute, for it would mean these proceedings were no longer protected whenever a claim of corporate negligence was made alone or coupled with a claim of negligence against an individual physician.

Neither do we think the language of the statute, considered in context, permits the construction plaintiffs urge. Subsection (a) of § 95 constitutes a broad grant of immunity from liability for damages "in *any* civil action on account of *any* act, statement or proceeding undertaken, made or performed within the scope of the functions of the committee." (Emphases supplied.) Subsection (b) of § 95 protects documents and related information against discovery or introduction into evidence "in *any* civil action against a hospital . . . which results from matters which are the subject of evaluation and review by the committee." (Emphasis supplied.) A civil action against a hospital grounded on the alleged negligent performance of the hospital's medical review com-

mittees is by the statute's plain language a civil action resulting from matters evaluated and reviewed by such committees.[2]

Plaintiffs contend that the construction we adopt will make it impossible for injured persons to hold hospitals accountable for their medical review committees' negligence. Again, we disagree.

The statute protects only a medical review committee's (1) proceedings; (2) records and materials it produces; and (3) materials it considers. But the statute also provides:

> [I]nformation, documents, or records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee. A member of the committee or a person who testifies before the committee may testify in a civil action but cannot be asked about his testimony before the committee or any opinions formed as a result of the committee hearings.

§ 95.

These provisions mean that information, in whatever form available, from original sources other than the medical review committee is not immune from discovery or use at trial merely because it was presented during medical review committee proceedings; neither should one who is a member of a medical review committee be prevented from testifying regarding information he learned from sources other than the committee itself, even though that information might have been shared by the committee. *Eubanks v. Ferrer*, 245 Ga. 763, 267 S.E. 2d 230 (1980).

The statute is designed to encourage candor and objectivity in the internal workings of medical review committees. Permitting access to information not generated by the committee itself but merely presented to it does not impinge on this statutory pur-

---

2. The following cases support our conclusion that the statute's protections apply in actions for corporate negligence: *Bost v. Riley*, 44 N.C. App. 638, 262 S.E. 2d 391 (1980); *West Covina Hospital v. The Superior Ct. of Los Angeles County*, 153 Cal. App. 3d 134, 200 Cal. Rptr. 162 (1984); *Matchett v. The Superior Ct. of Yuba County*, 40 Cal. App. 3d 623, 115 Cal. Rptr. 317 (1974); *Elam v. College Park Hospital*, 132 Cal. App. 3d 332, *modified*, 183 Cal. Rptr. 156 (1982); *Segal v. Roberts*, 380 So. 2d 1049 (Fla. App. 1979); *Hollowell v. Jove*, 247 Ga. 678, 279 S.E. 2d 430 (1981); *Eubanks v. Ferrer*, 245 Ga. 763, 267 S.E. 2d 230 (1980); *Jenkins v. Wu*, 102 Ill. 2d 468, 468 N.E. 2d 1162 (1984); *Texarkana Memorial Hospital v. Jones*, 551 S.W. 2d 33 (1977).

pose. These kinds of materials may be discovered and used in evidence even though they were considered by the medical review committee. This part of the statute creates an exception to materials which would otherwise be immune under the third category of items as set out above.

## IV.

[2] Defendants argue that the hospital's Board of Trustees is a medical review committee as defined in the Act. The plain language of § 76(5) will not permit such a conclusion. This section describes a medical review committee as "a committee . . . of a medical staff of a licensed hospital, or a committee of a peer review corporation or organization. . . ." A board of trustees of a hospital simply cannot fit within this statutory language. It is not a committee of a medical staff, nor is it a committee of a peer review corporation or organization. This is so even though, as defendants argue, the board reviews personnel recommendations of the medical review committees and has ultimate decision making authority upon these recommendations by virtue both of the hospital's bylaws and § 85 of the Act.[3]

[3] Contrary also to defendants' contention, we find nothing in the hospital's or medical staff's bylaws which makes Tinnell, as Chief Executive Officer, a member of the medical staff's committees. The medical staff's bylaws do provide that Tinnell, as Chief Executive Officer, "shall be invited to attend" meetings of the medical staff's executive committee.

Documents in the possession of and information known to the hospital's board and Tinnell are not thereby immune from discovery and use as evidence under § 95. Documents and information which are otherwise immune from discovery under § 95 do not,

---

3. The following cases from other jurisdictions support our conclusion on this point: *West Covina Hospital v. The Superior Ct. of Los Angeles County*, 153 Cal. App. 3d 134, 200 Cal. Rptr. 162 (1984); *Matchett v. The Superior Ct. of Yuba County*, 40 Cal. App. 623, 115 Cal. Rptr. 317 (1974); *Mercy Hospital v. Dept. of Professional Regulation, Bd. of Medical Examiners*, 467 So. 2d 1058 (Fla. App. 3d 1985); *Segal v. Roberts*, 380 So. 2d 1049 (Fla. App. 1979); *Hollowell v. Jove*, 247 Ga. 678, 279 S.E. 2d 430, 434 (1981); *Anderson v. Breda*, 700 P. 2d 737 (Wash. 1985); *State, Good Samaritan Medical Center-Deaconness Hospital Campus v. Maroney*, 365 N.W. 2d 887 (Wis. App. 1985). *But see Texarkana Memorial Hospital v. Jones*, 551 S.W. 2d 33 (1977).

however, lose their immunity because they were transmitted to the board or Tinnell, or both.

## V.

**[4]** Defendants assert on appeal, not having relied on either ground in the trial court, that any information or documents relating to peer reviews of the individual physicians not protected under § 95 are immune from discovery and use as evidence under a common law privilege and the statutory physician patient privilege. N.C.G.S. § 8-53 (1986). Our Court of Appeals in *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 293 S.E. 2d 901, did apply what it identified as a common law privilege in holding minutes of meetings and "good faith communications of" hospital peer review committees immune from discovery and use as evidence. The cases relied on in *Cameron* for the existence of such a privilege were libel actions in which the defense of qualified privilege arises where:

> '(1) a communication is made in *good faith*, (2) the subject and scope of the communication is one in which the party uttering it has a valid interest to uphold, or in reference to which he has a legal right or duty, and (3) *the communication is made to a person or persons having a corresponding interest, right, or duty.'*

*Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. at 436, 293 S.E. 2d at 915, *quoting Presnell v. Pell*, 298 N.C. 715, 720, 260 S.E. 2d 611, 614 (1979) (emphases in original). We have found no case other than *Cameron* in North Carolina which has applied the defense of qualified privilege in libel actions to render peer review proceedings immune from discovery and introduction into evidence. Even *Cameron* appears to have limited its application to medical review committees. A federal court in *Bredice v. Doctor's Hospital, Inc.*, 50 F.R.D. 249 (D.D.C. 1970), recognized a common law medical review privilege applicable to a hospital staff's medical review committees.

In *Cameron* the statutory predecessor to § 95 was enacted after the filing of the complaint but before the case was decided on appeal. The *Cameron* court recognized that the policy in this predecessor statute "is grounded in our common law." 58 N.C. App. at 437, 293 S.E. 2d at 915. The Court of Appeals in the in-

stant case concluded that whatever common law privilege existed in North Carolina "has been codified in section 95." 76 N.C. App. at 258, 332 S.E. 2d at 503. We agree with this conclusion.

With regard to the statutory physician-patient privilege, suffice it to say that this privilege was never invoked in the trial court. It is impossible for us to say from the record before us which information and which documents might fall within the ambit of the privilege. The privilege is, moreover, not absolute but qualified; the trial court may require disclosure of privileged information under the statute "if in his opinion the same is necessary to a proper administration of justice." N.C.G.S. § 8-53 (1986). Consequently, we leave it to the trial court on remand to apply this privilege according to its terms to whatever information or documents it may be applicable, if the trial court considers it necessary to do so.

## VI.

[5] We now proceed to apply the foregoing principles to the various discovery rulings of Judge Morgan. Judge Morgan denied plaintiffs' motion to compel the corporate defendants to answer an interrogatory that defendants "identify and state the name, address and telephone number of the custodian of the following." In the interrogatory there follows a description of various documents relating to personnel decisions, disciplinary investigations, peer evaluations, credentials and competence reviews, and patient complaints relating to Drs. Ross and Shapiro. This ruling was error. The protection afforded by § 95 is not compromised by merely identifying existing documents and giving pertinent information concerning their custodians. It is the contents of the documents which the statute may or may not protect from discovery. Indeed, as this case illustrates, it may be necessary to identify not only the document by name and its custodian, but also the document's source and the reason for its creation. Here, for example, the trial court placed under seal and forwarded to us as part of the record on appeal various documents in possession of defendants.[4]

4. These include: (1) minutes of the hospital's (a) Board of Trustees, (b) Executive Committee of the Medical Staff, (c) Executive Committee of the Board of Trustees, (d) joint meetings between the Board of Trustees and the Medical Staff's Executive Committee, (e) Credentials Committee, (f) Joint Conference Committee, (g) Special Investigative Committee; (2) correspondence between the Board of

Having carefully studied the Bylaws of the Medical and Dental Staff of the hospital, we are satisfied that all of the committees of the Medical Staff mentioned above are "medical review committees" within the meaning of the Act. All of them were formed for the purpose of those kinds of evaluations or for "medical staff credentialing," as set out in § 76(5). Some of the documents identified, consequently, are obviously, by virtue of their description, protected from discovery by § 95, *e.g.*, minutes of the various medical review committees. On the other hand, minutes of the hospital's Board of Trustees and the Board's Executive Committee would appear to be discoverable, except insofar as these minutes contain information or documents otherwise protected by § 95. Section 95 offers no protection to the records and documents furnished by the individual physicians in their applications for hospital privileges. Some of the correspondence would seem to be discoverable unless, again, either it contains information generated at a medical review committee meeting or originated with or at the instance of one of the medical review committees or a member of that committee acting in his capacity as a member.

Insofar as Judge Morgan denied plaintiffs' motion to produce materials which are discoverable under the principles herein announced, it was error. We have already identified some materials which defendants may be required to produce. On remand defendants, as we have indicated, should be required to fully answer plaintiffs' interrogatories so as to identify the nature of the documents in their possession, and the custodians thereof. After the documents have been appropriately identified, the trial court may then decide, under the principles herein announced, which documents should and which should not be produced.

---

Trustees and Dr. Ross; (3) correspondence between Tinnell and Ross and correspondence between Tinnell and others concerning Dr. Ross; (4) correspondence between Dr. Ross and the president of the Medical Staff's Executive Committee; (5) correspondence from the Medical Staff's Executive Committee to others concerning Dr. Ross; (6) memorandums to and from the Board of Trustees relating to the Medical Committee's Executive Staff meetings; (7) correspondence to and from the Credentials Committee and Tinnell; (8) memos regarding and report of the Special Investigating Committee, including a letter to Dr. Ross; (9) memos regarding and report of Special Concurrent Review Committee; (10) personnel records and documents concerning Dr. Ross's application for hospital privileges; (11) personnel records and documents concerning Dr. Shapiro's application for hospital staff privileges; and (12) letter to Dr. Ross from Medical Records Committee.

Judge Morgan quashed plaintiffs' subpoena duces tecum issued to Tinnell in its entirety. This subpoena commands Tinnell to produce writings which are generally described in plaintiffs' brief as follows:

(a) all direct complaints, and all direct allegations of misbehavior, unprofessional conduct, professional negligence or incompetence regarding Dr. Ross or Dr. Shapiro received by the witness from any person.

(b) all disciplinary investigations and hearings, all peer evaluations and recommendations, all personnel information, all credentials evaluations and all recommendations to grant, continue or discontinue staff privileges of Dr. Ross or Dr. Shapiro at the Hospital.

(c) all incident reports concerning Dr. Ross's and Dr. Shapiro's treatment of any patient.

(d) all meetings or hearings of the Executive Committee of the Medical Staff, or any other medical staff committee relating to Dr. Ross or Dr. Shapiro.

(e) all meetings or hearings of the Board of Trustees or any members of the Board of Trustees relating to Dr. Ross or Dr. Shapiro.

Under the principles we have set out herein, Judge Morgan erred in quashing the subpoena insofar as it commanded Tinnell to produce documents in categories (a), (c) and (e), except in the latter case insofar as these documents may otherwise be protected by § 95. Judge Morgan correctly quashed the subpoena insofar as it asked for documents in categories (b) and (d).

Finally, on defendants' motion for a protective order regarding Tinnell's testimony, Judge Morgan ruled he could not be "asked any questions about, nor may he give any testimony regarding, any matters relating to the hospital's medical review processes, including the credentialing and investigation processes, except with the express permission of counsel for the hospital." Insofar as Judge Morgan means that Tinnell cannot testify to the medical review processes in which he participated with one of the medical review committees, it is altogether correct. Tinnell, under the principles we have herein announced, may be examined about

information he received solely in his capacity as chief executive officer so long as this material is not otherwise protected by § 95.

The decision of the Court of Appeals, except as herein modified, is affirmed.

Modified and affirmed.

Justice MARTIN dissents.