694 S.E.2d 758 (2010)
In the Matter of D.S.
No. 273PA09.
Supreme Court of North Carolina.
June 17, 2010.
*759 Roy Cooper, Attorney General, by LaToya B. Powell, Assistant Attorney General, for the State-appellant.
Peter Wood, Raleigh, for juvenile-appellee.
HUDSON, Justice.
Here we address whether a Robeson County juvenile court counselor ("JCC") complied with N.C.G.S. § 7B-1703 when the JCC filed a petition alleging D.S. to be delinquent, and if not, whether the failure to do so deprived the court of subject matter jurisdiction. The Court of Appeals determined that the JCC did not timely file the juvenile delinquency petition alleging sexual battery in accordance with N.C.G.S. § 7B-1703. In re D.S., ___ N.C.App. ___, ___, 682 S.E.2d 709, 711 (2009). Relying on a prior opinion from that court, which holds that such failure divests the district court of subject matter jurisdiction, the Court of Appeals "vacate[d] the sexual battery adjudication." Id. at ___, 682 S.E.2d at 710-11 (citing In re J.B., 186 N.C.App. 301, 303, 650 S.E.2d 457, 458 (2007)). Because we conclude that the JCC here timely filed the juvenile delinquency petition in accordance with N.C.G.S. § 7B-1703, which in any event does not implicate subject matter jurisdiction, we reverse.
The record tends to show that in September 2007, D.S. and A.A. were fifth grade classmates. It was alleged that during class on 21 September 2007, D.S. touched A.A. multiple times on her buttocks and between her legs with a straw-like candy, known as Pixy Stix. Later A.A. told School Resource Officer Denise Ward ("SRO Ward") what had occurred.
SRO Ward filed a complaint with Robeson County JCC Chris Britt ("Mr. Britt") alleging D.S. to be delinquent for committing simple assault by "touching [A.A.] on her butt, [two] times with his hands" on 21 September 2007, in violation of N.C.G.S. § 14-33(a). Mr. Britt received the complaint on 25 September 2007, and on 10 October 2007, he approved the complaint for filing. Based thereon, Mr. Britt filed a juvenile delinquency petition alleging simple assault with the clerk of superior court. On 15 November 2007, Mr. Britt received a second complaint from SRO Ward regarding the same 21 September 2007 incident. This complaint alleged D.S. had violated N.C.G.S. § 14-27.5 in that D.S. "for the purpose of sexual arousal or sexual gratification engage[d] in sexual contact, by placing his hand on the buttocks of ... [A.A.], by force and against [her] will." On 16 November 2007, Mr. Britt approved this complaint for filing and filed a second juvenile delinquency petition with the clerk's office, this time alleging sexual battery.
In April 2008 the District Court in Robeson County entered an adjudication order finding D.S. delinquent for committing both offenses. The court then entered an order imposing a Level I disposition, which placed D.S. on probation for a period of up to twelve months. D.S. appealed the adjudication order to the Court of Appeals.
In the Court of Appeals D.S. argued that the trial court erred by adjudicating him delinquent of both simple assault and sexual battery. The Court of Appeals rejected D.S.'s arguments as to simple assault and affirmed the trial court's delinquency adjudication based on that charge. Id. at ___, 682 S.E.2d at 712. However, the court agreed with D.S. that "the trial court did not have subject matter jurisdiction over the second petition alleging sexual battery" because the JCC did not file it within the time period mandated by section 7B-1703. Id. at ___, 682 S.E.2d at 711. The court explained:
In the case before us, the [JCC] received all of the information regarding the allegations against [D.S.] on 25 September 2007, but failed to act swiftly when he filed the second petition over 50 days later. Because it was untimely filed, the trial court *760 did not have subject matter jurisdiction over the second petition alleging sexual battery. Therefore, the order adjudicating D.S. as a delinquent juvenile on the allegations of sexual battery must be vacated.
Id. at ___, 682 S.E.2d at 711. Having so concluded, the court "vacate[d] the adjudication and disposition orders for D.S. on the allegations of sexual battery." Id. at ___, 682 S.E.2d at 712.
On 6 July 2009, the State filed a petition for discretionary review with this Court seeking review of the following two issues:
Did the Court of Appeals err by holding that the provisions of N.C.G.S. § 7B-1703 are jurisdictional prerequisites in juvenile delinquency cases?
Even if N.C.G.S. § 7B-1703 is a jurisdictional statute, did the Court of Appeals err by holding the trial court had no jurisdiction where the complaint alleging sexual battery was received by the Department of Juvenile Justice and Delinquency Prevention one day prior to the filing of the juvenile petition?
We allowed the State's petition for discretionary review.
The State argues that the Court of Appeals erred by concluding that: (1) The N.C.G.S. § 7B-1703 timing requirements are prerequisites for the district court to obtain subject matter jurisdiction in a juvenile delinquency case; and (2) Mr. Britt did not comply with these requirements. We agree, although we address these issues in reverse order.
Our principal task here is to interpret the statute. In determining the meaning of a statute, this Court follows traditional rules of statutory construction.
Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks to accomplish. The statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently.
Shelton v. Morehead Mem'l Hosp., 318 N.C. 76, 81-82, 347 S.E.2d 824, 828 (1986) (citations omitted). Questions of statutory interpretation are questions of law and are reviewed de novo. E.g., Brown v. Flowe, 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998) (citation omitted).
The statutory timeline for juvenile delinquency petitions is set forth in section 7B-1703, which provides in pertinent part:
(a) The juvenile court counselor shall complete evaluation of a complaint within 15 days of receipt of the complaint, with an extension for a maximum of 15 additional days at the discretion of the chief court counselor. The juvenile court counselor shall decide within this time period whether a complaint shall be filed as a juvenile petition.
(b) Except as provided in G.S. 7B-1706, if the juvenile court counselor determines that a complaint should be filed as a petition, the counselor shall file the petition as soon as practicable, but in any event within 15 days after the complaint is received, with an extension for a maximum of 15 additional days at the discretion of the chief court counselor. The juvenile court counselor shall assist the complainant when necessary with the preparation and filing of the petition, shall include on it the date and the words "Approved for Filing", shall sign it, and shall transmit it to the clerk of superior court.
N.C.G.S. § 7B-1703(a), (b) (2007).
Here we first hold that the JCC, Mr. Britt, complied with the statute. Section 7B-1703 states that a JCC has "15 days after the complaint is received, with an extension for a maximum of 15 additional days at the discretion of the chief court counselor," to file a complaint as a juvenile petition. Id. § 7B-1703(b). Thus, we look for the meaning of the phrase "after the complaint is received." Id.
The State argues that the Court of Appeals interpreted the term "complaint" in a manner that completely contravenes the plain language of section 7B-1703. Specifically, the State contends that (1) a "complaint" is a written, sworn document that contains the allegation(s) against the juvenile; (2) as evidenced by Chapter 7B, Article *761 17, the JCC's role in screening and evaluating a complaint is largely ministerial and limited to considering the specific charge(s) alleged therein; (3) Mr. Britt could not have filed a petition alleging sexual battery based upon the first complaint, which did not allege that D.S. had committed sexual battery; (4) because the second complaint contained new allegations, that complaint was "received" by Mr. Britt on 15 November 2007; and (5) therefore, Mr. Britt complied with section 7B-1703 by filing the petition alleging sexual battery the next day, 16 November 2007.
The juvenile responds that 15 November 2007 could only qualify as the date Mr. Britt "received" the second complaint if the second complaint was based on new information or evidence, not merely new allegations. Further, he contends that Mr. Britt essentially "bur[ied] his head in the sand and ignore[d] the facts" behind the first complaint and that Mr. Britt should have conducted a "reasonable investigation based on the facts [that were] readily available" at the time. Had Mr. Britt done so, the juvenile maintains, Mr. Britt would or should have known to include the sexual battery allegation in the first petition.
The Court of Appeals explicitly acknowledged that two complaints were filed here. In re D.S., ___ N.C.App. at ___, 682 S.E.2d at 711. Despite this finding, the court appeared to conclude that because both petitions apparently arose from the same incident, and because Mr. Britt learned of these facts when he received the first complaint, the date he "received" the complaint alleging sexual battery was 25 September 2007, not 15 November 2007. Id. at ___, 682 S.E.2d at 711. In reaching this conclusion the Court of Appeals treated the underlying allegations, rather than the document itself, as the "complaint" and emphasized the JCC's obligation "to act swiftly" in dealing with juvenile delinquency complaints. Id. at ___, 682 S.E.2d at 711.
While the term "complaint" is not defined in Chapter 7B, it is defined in the North Carolina Administrative Code[1] as: "A written allegation that a juvenile is delinquent or undisciplined with a signature verifying that the allegation is true. A complaint initiates the intake process."[2] 28 NCAC 4A.0101 (Apr.2003); see also Lou A. Newman et al., North Carolina Juvenile Defender Manual 78 (John Rubin ed., School of Gov't, Chapel Hill, N.C.2008) [hereinafter Newman, Juvenile Defender] (stating that a "[c]omplaint is the report from a law enforcement officer or from a member of the community made to the [JCC]'s office alleging delinquent acts committed by a juvenile"). The Administrative Code further provides:
(a) ComplaintsComplaints alleging that a juvenile is undisciplined or delinquent are accepted by a juvenile court counselor for evaluation. All complaints shall be in writing and must contain the following:
(1) The juvenile's name;
(2) The juvenile's age and date of birth;
(3) The name of the juvenile's parents, guardians, or custodians;
(4) The juvenile's home address;
(5) The facts supporting any allegation that a juvenile is undisciplined or delinquent;
(6) The date the complaint is received by the court counselor;
(7) The complainant's name, address, and telephone number; and
(8) The complainant's signature, verified before an official authorized to administer oaths.
28 NCAC 4A.0102 (Apr.2003). These provisions, which define "complaint" and specify its requisite contents, indicate, as the State suggests, that a "complaint" is a written and sworn document whose primary purpose is to *762 articulate specific allegation(s) of delinquency to the JCC.
Chapter 7B, Article 17, entitled "Screening of Delinquency and Undisciplined Complaints," entrusts the JCC[3] with the primary responsibility for "intake," defined as "[t]he process of screening and evaluating a complaint alleging that a juvenile is delinquent... to determine whether the complaint should be filed as a petition," and articulates the JCC's responsibilities and the guidelines for fulfilling them. N.C.G.S. §§ 7B-1501(13), -1700 to -1707 (2007). As with the section 7B-1703 timelines, which begin to run "when the complaint is received," the JCC's initial intake responsibility regarding a juvenile delinquency matter begins "[w]hen a complaint is received." Id. §§ 7B-1701, -1703. "The pleading in a juvenile action is the petition," and a juvenile delinquency "action is commenced by the filing of a petition in the ... office" of the clerk of superior court. N.C.G.S. §§ 7B-1801, -1804 (2007); see also Newman, Juvenile Defender 78 (stating that the petition "is the document filed in the office of the clerk of superior court initiating a juvenile court proceeding"). At oral argument the parties indicated that complainants, especially law enforcement officers, typically file a complaint by using one of the AOC's standard petition forms, and generally, the complaint and petition are the same document. The State further indicated that when this is done, the "complaint" becomes the "petition" when the JCC marks the "Approved for Filing" box on the AOC form, dates and signs the form, and files it with the clerk of superior court. See Newman, Juvenile Defender 78 ("The complaint is typically recorded on the Administrative Office of the Courts (AOC) juvenile petition form."). It appears that SRO Ward followed this course of action here, submitting the first complaint on the AOC petition form used for misdemeanor assaults (AOC-J-312, Rev.7/06) and the second complaint on the AOC's general juvenile delinquency petition form (AOC-J-310, Rev. 7/06).
These authorities governing the JCC's intake obligations support the State's argument that the JCC's function is strictly limited, and consequently, that Mr. Britt need not have filed a petition alleging sexual battery based on the allegations contained in the first complaint. We conclude that the natural and ordinary meaning of the phrase, "when the complaint is received," is the date on which the JCC's office receives a document alleging that a juvenile is delinquent, and we further conclude that nothing about "the context requires [this phrase] to be construed differently." Shelton, 318 N.C. at 82, 347 S.E.2d at 828.
Under the juvenile code, once the JCC receives a complaint, the JCC must "make a preliminary determination" as to whether he is statutorily barred from filing or whether he is obligated to "file the complaint as a petition." N.C.G.S. § 7B-1701. The JCC must "without further inquiry ... refuse authorization to file the complaint as a petition" if the complaint does not state a cause of action within the jurisdiction of the court, does not contain sufficient facts to legally support the charge alleged therein, or is frivolous. Id. If the JCC "finds reasonable grounds to believe that the juvenile has committed one of the ... nondivertible offenses" specified in section 7B-1701, the JCC must, "without further inquiry, ... authorize the complaint to be filed as a petition." Id. When, as here, the JCC's authority, or lack thereof, to file a complaint as a petition is not specifically mandated by section 7B-1701, the JCC must conduct an evaluation to "determine whether a complaint should be filed as a petition, the juvenile [should be] diverted [to a diversion plan] pursuant to G.S. 7B-1706, or the case [should be] resolved without further action." Id. § 7B-1702. Section 7B-1703 instructs the JCC to decide whether to file the complaint as a petition and if he decides to do so, to file the petition in accordance with the timelines contained therein. Id. § 7B-1703. Nothing in these provisions suggests, as D.S. argues, that the JCC is permitted, let alone obligated, to investigate beyond the specific allegations contained in the complaint to determine every possible criminal offense that may arise or to include *763 additional allegations in the petition that were not specifically articulated in the complaint. However, the JCC is expressly prohibited from "engag[ing] in field investigations to substantiate complaints [and from]... produc[ing] supplementary evidence" during the entire "intake" process, although the JCC is permitted to "refer complainants to law enforcement agencies for those purposes." Id. § 7B-1700. Viewing these statutory provisions in conjunction with the Administrative Code provisions that define the term "complaint" and articulate its requisite components, and given the strictly defined role our legislature intended for the JCC during intake, Mr. Britt need not have filed a petition alleging sexual battery based on the first complaint because, even though that complaint alleged that D.S. had touched A.A. on her buttocks and between her legs, it did not allege that D.S. had committed sexual battery or had touched A.A. for the purpose of sexual arousal or gratification.
Moreover, while we agree with the Court of Appeals and D.S. that some of the purposes and policies articulated in section 7B-1500 and the timelines contained in section 7B-1703 indicate that our legislature intended for juvenile delinquency cases to be resolved expeditiously, we do not believe we are thereby required to deviate from the plain and ordinary meaning of the phrase "after the complaint is received." In addition to the need for swift action that the Court of Appeals and D.S. emphasize, section 7B-1500 articulates the following purposes and policies underlying the statutes related to undisciplined and delinquent juveniles:
(1) To protect the public from acts of delinquency.
(2) To deter delinquency and crime, including patterns of repeat offending:
a. By providing swift, effective dispositions that emphasize the juvenile offender's accountability for the juvenile's actions; and
b. By providing appropriate rehabilitative services to juveniles and their families.
(3) To provide an effective system of intake services for the screening and evaluation of complaints and, in appropriate cases, where court intervention is not necessary to ensure public safety, to refer juveniles to community-based resources.
(4) To provide uniform procedures that assure fairness and equity; that protect the constitutional rights of juveniles, parents, and victims; and that encourage the court and others involved with juvenile offenders to proceed with all possible speed in making and implementing determinations required by this Subchapter.
Id. § 7B-1500 (2007); see also id. § 7B-2500 (2007) (stating that "[t]he purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction, including the protection of the public," and in "develop[ing] a disposition in each case," courts should "[e]mphasize[] accountability and responsibility" by the juvenile and the adult who is responsible for the juvenile and "[p]rovide [] the appropriate consequences, treatment, training, and rehabilitation to assist the juvenile toward becoming a nonoffending, responsible, and productive member of the community"). Nothing in these statutory provisions indicates our legislature's intent to elevate the expediency of the JCC's intake obligations over these other articulated purposes, as the Court of Appeals appeared to conclude and D.S. argues here. Further, the Court of Appeals' and D.S.'s proffered interpretation of section 7B-1703 undermines the other stated purposes articulated in sections 7B1500 and 7B-2500.
We further conclude that our legislature did not intend the timing requirements of section 7B-1703 to be jurisdictional. Without mentioning section 7B-1601, "Jurisdiction over delinquent juveniles," D.S. argues that Mr. Britt's alleged failure to comply with the timeline at issue deprived the district court of subject matter jurisdiction. Id. § 7B-1601 (2007). In Chapter 7B, Article 16, entitled "Jurisdiction," the legislature gave district courts broad jurisdiction over delinquent juvenile cases. Id. §§ 7B-1600 to -1604 (2007). "The court has exclusive, original jurisdiction over *764 any case involving a juvenile who is alleged to be delinquent. For purposes of determining jurisdiction, the age of the juvenile at the time of the alleged offense governs." Id. § 7B-1601(a). N.C.G.S. § 7B1501(4) defines "`Court'" as "[t]he district court division of the General Court of Justice," and N.C.G.S. § 7B-1501(7) defines "[d]elinquent juvenile" as "[a]ny juvenile who, while less than 16 years of age but at least 6 years of age, commits a crime or infraction under State law or under an ordinance of local government ... or who commits indirect contempt by a juvenile as defined in G.S. 5A-31". Id. § 7B-1501(4), -(7) (2007).
On its face section 7B-1703 does not mention jurisdiction, nor does it indicate that a JCC's failure to meet the timing requirements contained therein divests the district court of subject matter jurisdiction. We believe that had the legislature intended section 7B-1703 to implicate subject matter jurisdiction, the legislature would have either included these requirements in Chapter 7B, Article 16 or expressly stated so in section 7B-1703 itself. See id. § 7B-1802 (2007) ("The petition shall allege the facts that invoke jurisdiction over the juvenile."). Because the legislature did neither, we conclude that it did not intend for the section 7B-1703 timelines to function as prerequisites for district court jurisdiction over allegedly delinquent juveniles. We note that this decision is consistent with the conclusions reached in prior North Carolina appellate decisions that have addressed Chapter 7B timeline requirements and jurisdiction, particularly in the contexts of abuse, neglect, and dependency and termination of parental rights. See, e.g., In re C.L.C., 171 N.C.App. 438, 443-445, 615 S.E.2d 704, 707-08 (2005) (holding that the statutory timelines governing the scheduling of the initial post-disposition custody review hearing under section 7B-906(a), the filing of permanency planning orders under section 7B-907(c), and the filing of a petition to terminate parental rights under section 7B-907(e) are "`directory, rather than mandatory and thus, not jurisdictional'" (quoting In re B.M., 168 N.C.App. 350, 354, 607 S.E.2d 698, 701 (2005))), aff'd per curiam in part and disc. rev. improvidently allowed, 360 N.C. 475, 628 S.E.2d 760 (2006).
We conclude that the JCC here (Mr. Britt) complied with the timelines contained in section 7B-1703 by filing the juvenile petition alleging sexual battery one day after receiving the juvenile complaint alleging sexual battery. Moreover, we conclude that our legislature did not intend for these timelines to implicate subject matter jurisdiction. Accordingly, we reverse the decision of the Court of Appeals as to the issues before this Court on appeal and remand this case to the Court of Appeals for consideration of D.S.'s remaining assignments of error related to the sexual battery adjudication.
REVERSED IN PART AND REMANDED.
NOTES
[1] The Administrative Code provisions regarding "Juvenile Justice and Delinquency Prevention" are implemented by the Department of Juvenile Justice and Delinquency Prevention under the rulemaking authority granted to it by our legislature. See N.C.G.S. §§ 143B-512(a), -516 (2007); see also 28 NCAC 1A.0101 (Apr.2003).
[2] "`Intake'" is defined by statute as: "The process of screening and evaluating a complaint alleging that a juvenile is delinquent or undisciplined to determine whether the complaint should be filed as a petition." N.C.G.S. § 7B-1501(13) (2007).
[3] JCC is defined as: "A person responsible for intake services and court supervision services to juveniles under the supervision of the chief court counselor." N.C.G.S. § 7B-1501(18a) (2007).