GLORIA WHISENHUNT AND CURTIS WHISENHUNT v. ROBERT P. ZAMMIT, M.D., AND POLLACK, ZAMMIT & FERGUSON, M.D., P.A.

No. 8621SC930

(Filed 21 July 1987)

1. **Hospitals § 6; Physicians, Surgeons and Allied Professions § 12.1— medical malpractice—"credentialing records" of hospital privileged**

   The trial court in a medical malpractice action did not err in refusing to allow plaintiffs, through discovery, to get the "credentialing records" of a hospital as they pertained to defendant, since the documents sought were confidential and privileged under N.C.G.S. §§ 143-318.11 and 131E-95.

2. **Physicians, Surgeons and Allied Professions § 15— reading from drug inserts not allowed—no error**

   In a medical malpractice action where plaintiffs alleged that defendant failed to monitor effects of prescription medication, the trial court did not err in refusing to allow plaintiffs' expert witness to read from drug inserts provided by pharmaceutical manufacturers, since plaintiffs did not show that their expert witness relied upon the packaging inserts to arrive at his opinions; moreover, even if it was error to exclude the evidence, such error was not prejudicial to plaintiffs, since the witness was allowed to read from the Physicians Desk Reference, and it contained basically the same warnings and contraindications as the package inserts.

3. **Physicians, Surgeons and Allied Professions § 15.1— malpractice—expert witness—impeachment questions proper**

   The trial court in a medical malpractice action did not err in permitting impeachment of the plaintiffs' expert witness by cross-examination concerning his suspension of staff privileges from two hospitals, since the questions allowed the jury to decide how much weight to give to the witness's testimony and allowed the jury to determine the bias of the witness.

APPEAL by plaintiffs from *Long, Judge.* Judgment entered 28 February 1986 in Superior Court, FORSYTH County. Heard in the Court of Appeals on 3 February 1987.

*Harrell Powell, Jr., and Garry Whitaker for plaintiff appellants.*

*Petree, Stockton & Robinson by J. Robert Elster, Michael L. Robinson and J. David Mayberry for defendant appellees.*

COZORT, Judge.

Plaintiffs filed suit for negligence against defendants, alleging defendant physician failed to monitor effects of prescription

medication. The action centers around treatment rendered by defendant, Dr. Robert Zammit, following a total abdominal hysterectomy which was performed on plaintiff Gloria Whisenhunt. One week after her operation, the plaintiff began to experience symptoms consistent with a post-operative infection. A regimen of antibiotic therapy was started, and the types of antibiotic drugs that plaintiff was taking were modified periodically to combat the symptoms of infection she exhibited. As a result of the use of several types of antibiotics, the plaintiff contracted pseudomembranous enterocolitis, a condition characterized by constant diarrhea. At the conclusion of the evidence, the jury returned a verdict for the defendants. On appeal, the plaintiffs argue that the trial court committed prejudicial error by prohibiting discovery of the "credentialing records" of Forsyth Memorial Hospital as they pertain to defendant Zammit; that the trial court erred in not allowing the plaintiffs' expert witness to read from drug inserts provided by pharmaceutical manufacturers; and that the trial court erred in allowing defendants to cross-examine plaintiffs' expert about the suspension of the expert's privileges at two hospitals. We find no error.

[1] The plaintiffs first contend that the trial court erred by not allowing them, through discovery, to get the "credentialing records" of Forsyth Memorial Hospital as they pertain to Dr. Zammit. Immediately prior to the trial of this matter, about two years after plaintiffs commenced this action, the plaintiffs, pursuant to N.C.G.S. § 1A-1, Rule 45(c), issued a subpoena to Forsyth Memorial Hospital (a non-party in the case) seeking production of its credentialing file on Dr. Zammit. Forsyth Memorial moved to quash the subpoena on the grounds that the documents sought were confidential and privileged, under N.C.G.S. §§ 143-318.11 and 131E-95. The trial court granted the motion to quash. In their brief, plaintiffs argue that the trial court erred because the information requested was not privileged under these statutes. We disagree.

N.C.G.S. § 143-318.11(a)(17) states that a public body may hold an executive session and exclude the public:

(17) To hear, consider, and decide matters involving admission, discipline, or termination of members of the medical

staff of a public hospital. Final action on an admission or termination shall be reported at an open meeting.

Subsection (d) of N.C.G.S. § 143-318.11 provides that minutes and records of an executive session may be withheld from public inspection so long as public inspection would frustrate the purpose of the executive session. Plaintiffs have made no showing that they sought information other than that covered specifically by N.C.G.S. § 143-318.11(a)(17). We find the information sought to be privileged under that statute.

The plaintiffs' primary argument on this issue is that N.C.G.S. § 131E-95(b) does not apply in this case because the records they seek about Dr. Zammit are *not* the medical review committee's records about Dr. Zammit's treatment of plaintiff. Plaintiffs argue that they are seeking the "credentialing records of [defendant Zammit] in their entirety." Plaintiffs argue they are entitled to discover those records. We do not agree.

Our Supreme Court was recently faced with a similar issue in *Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 347 S.E. 2d 824 (1986). In that case, the plaintiff had alleged a negligence claim against a physician after the physician had performed surgery. Plaintiff also alleged a claim against a hospital for "corporate negligence" for allowing the physician to continue to practice at the hospital after having been put on notice of the physician's failure to meet ordinary standards of care. The plaintiff argued that proceedings of the medical review committee related to the corporate negligence claim of hospital were not privileged under N.C.G.S. § 131E-95 because they were not the records of the review of the specific claim against the physician. The Supreme Court rejected that argument, in an opinion by Justice (now Chief Justice) Exum:

> It would severely undercut the purpose of § 95, *i.e.*, the promotion of candor and frank exchange in peer review proceedings, if we adopted plaintiffs' construction of the statute, for it would mean these proceedings were no longer protected whenever a claim of corporate negligence was made alone or coupled with a claim of negligence against an individual physician.

Neither do we think the language of the statute, considered in context, permits the construction plaintiffs urge. Subsection (a) of § 95 constitutes a broad grant of immunity from liability for damages "in *any* civil action on account of *any* act, statement or proceeding undertaken, made or performed within the scope of the functions of the committee." (Emphases supplied.) Subsection (b) of § 95 protects documents and related information against discovery or introduction into evidence "in *any* civil action against a hospital . . . which results from matters which are the subject of evaluation and review by the committee." (Emphasis supplied.) A civil action against a hospital grounded on the alleged negligent performance of the hospital's medical review committees is by the statute's plain language a civil action resulting from matters evaluated and reviewed by such committees. (Footnote omitted.)

*Id.* at 82-83, 347 S.E. 2d at 828-29.

We find the analysis in *Shelton* applicable here. Plaintiffs cannot carve out an exception to § 95 by claiming they want to review credentialing records of defendant "in their entirety." The purpose of § 95 is to promote candor in peer review proceedings, and we will not undercut that purpose. The trial court did not err in quashing the subpoena.

**[2]** The plaintiffs' second contention on appeal is that the trial court erred in not allowing the plaintiffs' expert witness to read from drug inserts provided by pharmaceutical manufacturers. During the testimony of Dr. Jim Cleary, plaintiffs' expert witness, plaintiffs attempted to have Dr. Cleary read to the jury packaging inserts accompanying two prescription antibiotics. The plaintiffs contend that the inserts should have been allowed to have been read into evidence pursuant to N.C.G.S. 8C-1, Rule 803(18) which provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(18) Learned Treatises. — To the extent called to the attention of an expert witness upon cross-examination or *relied upon by him* in direct examination, statements contained in published treatises, periodi-

Whisenhunt v. Zammit

cals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits. [Emphasis supplied.]

To comply with Rule 803(18), the plaintiffs must show that the packaging inserts were relied upon by the expert witness in direct or cross-examination and must establish the inserts as reliable authority. After careful review of the trial transcripts, we find no testimony by the plaintiffs' expert that he relied on the packaging inserts. The expert witness stated that as a result of being asked to testify in this case he took specific courses in pharmacology so he could be prepared to give an honest, straightforward answer with questions dealing with pharmacology. When asked on direct examination what sources he had researched, the expert witness testified that he reviewed the Physicians Desk Reference, The Merck Manual (a concise summary of the practice of medicine) and specific books on gastroenterology. He never testified that he had relied on the packaging inserts to arrive at his opinions in this case. The only mention of the packaging inserts was when he was asked, on direct examination, if they were sent to physicians and if they were updated. Therefore, since the plaintiffs did not show that their expert witness relied upon the packaging inserts to arrive at his opinions, they failed to meet the requirements of N.C.G.S. § 8C-1, Rule 803(18).

Even if the action of excluding the inserts from being read into evidence was error, it was not prejudicial to the plaintiffs. The plaintiffs' expert witness testified that the Physicians Desk Reference contained basically the same warnings and contraindications as the package inserts. The trial court allowed the expert witness to read into evidence and to the jury portions of the Physicians Desk Reference dealing with the drugs in question. Since the expert was able to read essentially the same evidence from the Physicians Desk Reference as he would have from the inserts, any error was harmless.

[3] The plaintiffs' third contention on appeal is that the trial court committed prejudicial error and abused its discretion in per-

mitting impeachment of the plaintiffs' expert witness by permitting cross-examination on specific instances of conduct: his suspension of staff privileges from Lula Conrad Hoots Hospital in Yadkinville and Forsyth Memorial Hospital. Plaintiffs argue that the probative value of the impeachment was substantially outweighed by the unfair prejudice, the confusion of the issues, and the misleading of the jury. We find no merit to this argument.

N.C.G.S. § 8C-1, Rule 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This state rule is identical to its federal counterpart. Looking to the federal courts for guidance, we find the following from the United States Court of Appeals for the Fourth Circuit: "Appraisal of the probative and prejudicial value of evidence under Rule 403 (Fed. R. Evid. 403) is entrusted to the sound discretion of the trial judge; absent extraordinary circumstances, the Court of Appeals will not intervene in its resolution." *U.S. v. MacDonald*, 688 F. 2d 224, 227 (4th Cir. 1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed. 2d 951 (1983). The North Carolina Supreme Court has followed this reasoning. *See State v. Mason*, 315 N.C. 724, 731, 340 S.E. 2d 430, 435 (1986). In the present case, we find no abuse of discretion. The question of reasons for the witness's suspension allow the jury to decide how much weight to give to his testimony. The circumstances of his suspension may also have a bearing on the bias of the witness, which is a proper consideration for the jury.

In the trial below, we find

No error.

Judges MARTIN and PARKER concur.