Cynthia **BOCKWEG** and husband Gregory Bockweg, Individually and as Guardian Ad Litem for Heather Margaret Bockweg, Plaintiffs,

v.

Stephen G. **ANDERSON,** et al., Defendants.

No. C–86–936–WS.

United States District Court, M.D. North Carolina, Winston–Salem Division.

Oct. 23, 1987.

Kenneth B. Oettinger, Grover C. McCain, Jr., William R. Hamilton, Chapel Hill, N.C., for plaintiffs.

Joseph E. Elrod, III, Greensboro, N.C., for Link, Latham and Smith.

Michael L. Robinson, J. Robert Elster, Winston–Salem, N.C., for Clark, Anderson, Holland and Lyndhurst Gynecologic Associates, P.A.

D. Clark Smith, Jr., Walter F. Brinkley, Lexington, N.C., for Roufail and Fina.

Stephen M. Russell, Wm. Kearns Davis, Winston–Salem, N.C., for Bogard, Forsyth County Hosp. Authority, Inc. and Forsyth Memorial Hosp.

### ORDER

RUSSELL A. ELIASON, United States Magistrate.

Defendants move for an order compelling plaintiffs' expert witnesses to answer additional oral deposition questions. This action concerns a purported medical malpractice. Plaintiffs have listed over ten expert witnesses who they expect to testify at trial. In the examination of one of them, defendants propounded questions concerning her experience as an expert opinion witness in prior or current medical malpractice actions. Plaintiffs object to any such questions propounded to this or any other expert witness.

Plaintiffs contend that Rule 26(b)(4)(A), Fed.R.Civ.P., not only supplies the exclusive permissible means by which discovery may be conducted of expert witnesses, but unambiguously provides for an extremely limited scope for such discovery. Plaintiffs argue that expert witness discovery is limited to the non-privileged facts known or opinions held by the expert relevant to the subject matter of the lawsuit, citing *Knighton v. Villian & Fassio e Compagnia, etc.*

39 F.R.D. 11 (D.Md.1965). Defendants, on the other hand, argue that they should be permitted to query plaintiffs' expert witnesses concerning their prior or present involvement in other malpractice actions in order to develop potential evidence for cross-examination at trial.

## Discussion

The Court rejects plaintiffs' proposal that it construe Rule 26(b)(4)(A), Fed.R. Civ.P., so as to restrict any deposition of a party's expert witnesses to the facts known to them or opinions held relevant to the subject matter of the lawsuit which are not privileged. The rule itself does not contain any such explicit limitation. Therefore, the Court looks to the purpose and history of the rule, which provides the basis for the contrary conclusion.

Rule 26(b)(1), Fed.R.Civ.P., sets the tone for all discovery by providing that in general, any matter which is relevant to the subject matter and not privileged is discoverable. Rule 26(b)(4)(A) provides a formalized way for conducting such discovery with respect to expert witnesses a party expects to call at trial. First, a party may require the other side to identify their experts, the subject matter and the substance of the facts and opinions of the expected testimony, and a summary of the grounds for such opinion. Thereafter, the Court "may order further discovery by other means *subject to such restrictions as to scope* and such provisions ... concerning fees and expenses as the court may deem appropriate." (Emphasis added) Other than this nebulous statement, Rule 26(b)(4)(A) does not contain criteria for imposing "restrictions as to the scope" of further expert discovery. In formulating the rule,

> [t]he Advisory Committee Note is silent on what this provision contemplates, but apparently it is thought that the court may wish to restrict the deposition to the opinions that the expert is expected to give on direct examination at trial, and in this way prevent the discovering party from using the deposition to establish his own affirmative case. The earlier draft

of the rule stated that restriction as part of the rule itself.

8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2031, at 254 (1970). Significantly, the proposed restrictions on the scope of expert witness depositions was not put in the final rule. *Id.* at 253–54.

The Advisory Committee Notes do reveal that the rule substantially adopted the procedure utilized by the court in *Knighton v. Villian & Fassio, supra.* See *Federal Rules of Civil Procedure, 1970 Advisory Committee Notes*, 48 F.R.D. 487, 504. In *Knighton, supra*, the court used the two-step procedure now set out in the rule for obtaining information from an expert witness. It also made the comment that:

> [w]hile it is contemplated that a party will be entitled to obtain full disclosure of an expert's opinion and the facts and reasons upon which it is based, it is not contemplated that a party will be allowed, by deposition or otherwise, to conduct a preliminary cross-examination of his opponents' experts for the purpose of developing material to be used for impeachment nor to obtain the opinion of his opponents' expert on other facts than those on which he shaped on opinion.

39 F.R.D. at 13–14. Plaintiffs urge the Court to accept this comment as embodying the intended construction of Rule 26(b)(4)(A). They argue that the framers of the rule adopted *Knighton* specifically for the purpose of limiting depositions to the facts and opinions held by the expert together with a limited inquiry into his background, experience and education in order to eliminate burdensome questioning on collateral matters.

The Court rejects plaintiffs' proposed interpretation of Rule 26(b)(4)(A) for several reasons. First, the framers of the rule did not adopt the *Knighton, supra*, restriction concerning the scope of expert discovery. An earlier draft of the rule did contain such a restriction, but it was eliminated. *See* 8 C. Wright & A. Miller, *supra*, § 2031. At a minimum, failing to include this restriction on the scope of expert witness discovery means it is still an open question to be decided and developed on a case-by-case

basis. Furthermore, the history preceding the adoption of Rule 26(b)(4) convinces the Court that plaintiffs' cribbed reading of that rule is not acceptable as a general proposition.

The history of Rule 26(b)(4), Fed.R. Civ.P., *1970 Advisory Committee Notes*, 48 F.R.D. at 503, reveals that discovery of expert witnesses had been presenting the courts with problems. Some courts permitted discovery of expert witnesses, while others did not. Courts denying discovery of experts often did so under the theory that to permit discovery would unfairly benefit the other party by permitting it to discover and use its adversary's trial preparation without incurring its own costs for the expert opinion. This was considered a violation akin to obtaining an attorney's work product. Long, *Discovery and Experts*, 38 F.R.D. 111 (1966). Moreover, strict rules of exclusion were easier to apply and seemingly less harmful since they only excluded the information prior to trial. *Id.* at 119. The Advisory Committee rejected such authorities. It found that when the case involved patents or condemnation, expert testimony was likely to be determinative. Thus, rulings prohibiting pretrial discovery of expert witnesses made effective cross-examination and rebuttal at trial impossible, thereby adversely affecting the fairness of, and confidence in, the trial and its results. The problem could occur in any case where expert testimony was important. In order to correct that deficiency, Rule 26(b)(4)(A), as enacted, permits expert witness discovery in all categories of cases.

By both amendment to the rule and practice under it, the trend in the last few decades has been to expand and liberalize discovery of experts who are expected to testify at trial. Rule 26(b)(4) rejected those line of cases treating expert witnesses as being sacrosanct and instead recognized that, in general, trials would be more fairly and better tried if experts were handled more nearly like ordinary witnesses. Empirically, this trend has continued both in this Court and in others.[1] Often, the parties do not even exchange formal interrogatories, but rather merely exchange their experts' reports a few days prior to a set deposition. The deposition itself is often freely conducted.

In similar situations, two courts after examining Rule 26(b)(4)(A) have opted for permitting expanded discovery of expert witnesses. In *Norfin, Inc. v. International Business Mach. Corp.*, 74 F.R.D. 529 (D.Colo.1977), the court noted the necessity of using discovery in order to obtain information crucial for impeaching opinion witnesses. It found this essential to trial preparation and, therefore, permitted deposition of an expert opinion witness. In order to prevent abuse, the Court restricted the deposition to the matters relevant to that upon which the expert would offer an opinion and it provided for costs. In *Keith v. Van Dorn Plastic Machinery Co.*, 86 F.R.D. 458 (E.D.Pa.1980), the court solved the problem by deciding that the cross-examination of an expert witness concerning his background and experience for impeachment purposes did not involve matters of his expertise. It was viewed as requesting ordinary non-expert information. Therefore, the examination did not fall within Rule 26(b)(4)(A) and its procedures did not govern that aspect of the deposition. However, in order to prevent abuse of an expert witness, the court stated that deposition with respect to such matters would be permitted subject to the party paying a reasonable fee to the expert. *See also In re Agent Orange Product Liability Litigation*, 105 F.R.D. 577 (E.D.N.Y.1985).

The Court, therefore, concludes that Rule 26(b)(4)(A) should be construed so as to sanction liberal discovery of expert witnesses, including information relevant only for impeachment. The history of the rule suggests it was adopted to permit greater discovery of expert witnesses which was seen as a method for improving trials. Current practice and case law countenances such liberal explorations. The information defendants seek concerning the experts possible biases is relevant. Precluding deposition of an expert witness prior to

1. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2031, at 116 (1987 Supp.).

trial will not prevent examination of the expert with respect to the same matters at trial. Indeed, prohibiting cross-examination of an expert concerning his biases, fees, and related matters would normally be reversible error. *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir.1980) (fees); *Walker v. Firestone Tire and Rubber Company*, 412 F.2d 60 (2d Cir.1969) (other products liability cases); *see also Whisenhunt v. Zammit*, 86 N.C.App. 425, 358 S.E.2d 114, 117 (1987); *Paris v. Michael Kreitz, Jr., P.A.*, 75 N.C.App. 365, 331 S.E. 2d 234, 245–46 *cert. denied*, 315 N.C. 185, 337 S.E.2d 858 (1985). Plaintiffs do not suggest any cognizable harm in being forced to divulge these matters prior to trial.

Notwithstanding, the Court is mindful that in countenancing liberal discovery, it inevitably will have to face the possibility of some abuses occurring. Some parties have the financial ability to use discovery not only to gather information, but as a foil to harass and wear down their opponents. However, this eventually must always be faced whenever one abandons solutions which utilize simple, but wooden rules. While discretion creates uncertainty, it also permits a more reasoned decision, taking into account the peculiarities and needs of each case and the benefit of the Court's growing experience. As matters presently stand, the apparent advantages derived from permitting liberal discovery of expert witnesses outweigh the potential abuses. This is particularly true in cases such as the instant one where the expert witnesses may likely be the crucial witnesses in the trial.

The Court is not powerless to forestall abuses. It retains discretion to limit the scope of discovery of expert witnesses. Furthermore, it can shift burdens and costs directly through Rule 26(b)(4)(A)[2] or by use of its protective order powers pursuant to Rule 26(c), Fed.R.Civ.P. Like the framers of Rule 26(b)(4)(A), the Court need not now determine the exact parameters concerning the scope of discovery of expert witnesses.

In the instant case, defendants, in their examination of the registered nurse expert and the other expert witnesses, may question the witnesses concerning their involvement, past or present, in other malpractice actions. Plaintiffs fear defendants inquiries will go far afield and beyond areas which would develop or shed light on the bias of the witness, and delve into such matters as the exact fee arrangements for prior consultations, the hours they spent reviewing the cases, and other areas which in most instances will be trivial. The Court simply cannot salve all of these forebodings at the present time. It can only give the parties general guidance and should defendants queries go far afield, plaintiffs should take appropriate action and bring the matter to the Court's attention pursuant to Rule 30(d), Fed.R.Civ.P., and/or seek expenses and costs as discussed earlier.

IT IS THEREFORE ORDERED that defendants' motion to compel plaintiffs to instruct their expert witness Leigh Steadman, along with their other experts, to answer questions relating to their involvement as an expert witness in other malpractice actions is granted.

---

**2.** It has been suggested that the Court may not only assess the deposing party with the cost of the expert's time at the deposition, but also with the cost of developing the expert opinion where the deposing party uses the deposition to develop impeachment for use in his own case. 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2031, at 254 n. 80 (1970).