LASSIE M. SHARPE, PLAINTIFF v. DAVID ERIC WORLAND, GREENSBORO ANESTHE-
SIA ASSOCIATES, P.A., WESLEY LONG COMMUNITY HOSPITAL, INC., JOHN
DOES I THROUGH XXV, AND JANE DOES I THROUGH XXV, DEFENDANTS

No. ·COA98-557-2

(Filed 21 March 2000)

## Medical Malpractice— privileged documents—physician impairment treatment

The trial court erred in a medical malpractice action by denying defendant hospital's motion for a protective order and in requiring the hospital to produce all documents relating to defendant doctor's participation in the Physician's Health Program (PHP), a physician impairment treatment program operated by the North Carolina Medical Society, because: (1) N.C.G.S. § 90-21.22(e) provides that the pertinent documents have an unqualified privileged since they are "acquired, created, or used on good faith by" the PHP; (2) unlike N.C.G.S. § 131E-95, which allows discovery of documents produced by medical review committees that are "otherwise available" because it does not discourage the candor and objectivity of medical review committees, the discovery of the pertinent documents would discourage the legislature's intent of enacting N.C.G.S. § 90-21.22 for the purpose of encouraging health care providers to seek treatment for

their impairments; and (3) neither defendant hospital's possession of documents prepared by PHP nor the doctor's participation in Alcoholics Anonymous can reasonably transform the documents into public information.

Appeal by defendants Worland, Greensboro Anesthesia Associates, P.A., and Wesley Long Community Hospital, Inc., from order entered 24 February 1998 by Judge William H. Freeman in Guilford County Superior Court. Originally heard in the Court of Appeals 4 January 1999.

*Faison & Gillespie, by O. William Faison and John W. Jensen, for plaintiff-appellee.*

*Carruthers & Roth, P.A., by Richard L. Vanore and Norman F. Klick, Jr., for defendant-appellants Worland and Greensboro Anesthesia Associates, P.A.*

*Elrod Lawing & Sharpless, P.A., by Joseph M. Stavola, for defendant-appellant Wesley Long Community Hospital, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Michael E. Weddington, for North Carolina Physicians Health Program, Inc., amicus curiae.*

MARTIN, Judge.

This case is before us on remand from the North Carolina Supreme Court. *Sharpe v. Worland*, 351 N.C. 159, 522 S.E.2d 577 (1999).

Plaintiff filed this action alleging that she had been injured as a result of negligence on the part of David Eric Worland, M.D. ("Dr. Worland"); his employer, Greensboro Anesthesia Associates, P.A.; and Wesley Long Community Hospital, Inc. ("Hospital"). The action arises out of a surgical procedure which plaintiff underwent at defendant Hospital on 15 November 1993, during which Dr. Worland served as the anesthesiologist. Following the procedure, Dr. Worland administered an epidural for post-surgery pain management. Plaintiff alleges that Dr. Worland negligently administered the epidural, resulting in plaintiff's permanent loss of the use of her legs. She also alleges that defendant Hospital was negligent in allowing Dr. Worland to maintain staff membership privileges after it knew or should have known that

Dr. Worland was not practicing medicine in accordance with the applicable standard of care.

During an October 1997 deposition, Dr. Worland acknowledged his past participation in the Physician's Health Program, a treatment program operated by the North Carolina Medical Society designed specifically to deal with, and provide treatment for, physician impairment, which, according to the PHP's *amicus curiae* brief, includes conditions such as substance abuse, alcoholism, mental illness, sexual misconduct, aging and similar difficulties. In December 1997, plaintiff noticed the deposition of defendant Hospital and requested production of various documents for inspection, including documents containing information about Dr. Worland's participation in the PHP. Defendant Hospital moved for a protective order on the ground that the documents sought by plaintiff regarding Dr. Worland's participation in the PHP are protected by the privilege set out in G.S. § 90-21.22 (1997). In an order entered 24 February 1998 Judge Freeman denied Hospital's motion for a protective order, required Hospital to produce all documents in its possession concerning Dr. Worland's participation in the PHP, and instructed plaintiff's attorney that all such documents be kept sealed from the public.

Defendants' appeal from the trial court's order was dismissed by this Court as interlocutory and not affecting a substantial right under G.S. §§ 1-277(a) and 7A-27(d)(1), *Sharpe v. Worland*, 132 N.C. App. 223, 511 S.E.2d 35 (1999). The Supreme Court reversed, holding that "when . . . a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right." *Sharpe*, 351 N.C. at 166, 522 S.E.2d at 581. The case was remanded to this Court for a determination on the merits of whether the documents sought for discovery are protected by statutory privilege.

---

The sole issue presented in this appeal is whether and to what extent the documents in the possession of defendant Hospital, pertaining to Dr. Worland's participation in the PHP, are privileged. The discoverability of information regarding an individual's participation in a program for impaired physicians is governed by G.S. § 90-21.22 (1997). Of particular importance in the present case is G.S. § 90-21.22(e), which provides:

> Any confidential patient information and other nonpublic information acquired, created, or used in good faith by [the North

Carolina Medical Society and its local medical society components and the North Carolina Academy of Physician Assistants] pursuant to this section shall remain confidential and shall not be subject to discovery or subpoena in a civil case. No person participating in good faith in the peer review or impaired physician or impaired physician assistant programs of this section shall be required in a civil case to disclose any information acquired or opinions, recommendations, or evaluations acquired or developed solely in the course of participating in any agreements pursuant to this section.

G.S. § 90-21.22 has not previously been interpreted by the appellate courts of this State. We preface our analysis by noting that statutory interpretation begins with the plain meaning of the words of the statute. *Radzisz v. Harley Davidson of Metrolina, Inc.*, 346 N.C. 84, 484 S.E.2d 566 (1997); *Three Guys Real Estate v. Harnett County*, 345 N.C. 468, 480 S.E.2d 681 (1997). Where the plain meaning of the statute is clear, no further analysis is required. *Three Guys*, 345 N.C. at 472-73, 480 S.E.2d at 683-84. Where the plain meaning is unclear, legislative intent controls. *State v. Hart*, 287 N.C. 76, 213 S.E.2d 291 (1975).

I.

Defendant argues in part that the information sought is privileged because it was "acquired, created, or used in good faith by" the PHP, a component of the North Carolina Medical Society, pursuant to G.S. § 90-21.22(e). Plaintiff responds, relying on *Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 347 S.E.2d 824 (1986), that the documents fall outside the protections of the privilege set forth in subsection (e) because they are available from a source other than the PHP. In *Shelton*, the North Carolina Supreme Court held that the scope of the privilege provided by G.S. § 131E-95, which regulates discovery of information produced by medical review committees, is limited to information that is not "otherwise available," that is, available from a source other than the medical review committee itself. *Shelton*, 318 N.C. at 83, 347 S.E.2d at 829. The *Shelton* court observed:

> The statute [§ 131E-95] protects only a medical review committee's (1) proceedings; (2) records and materials it produces; and (3) materials it considers. But the statute also provides:
>
> "[I]nformation, documents, or records otherwise available are not immune from discovery or use in a civil action merely because

they were presented during proceedings of the committee. A member of the committee or a person who testifies before the committee may testify in a civil action but cannot be asked about his testimony before the committee or any opinions formed as a result of the committee hearings."

[N.C. Gen. Stat. § 131E-95.]

These provisions mean that information, in whatever form available, from original sources other than the medical review committee is not immune from discovery or use at trial merely because it was presented during medical review committee proceedings; neither should one who is a member of a medical review committee be prevented from testifying regarding information he learned from sources other than the committee itself, even though that information might have been shared by the committee. [citation omitted.]

The statute is designed to encourage candor and objectivity in the internal workings of medical review committees. Permitting access to information not generated by the committee itself but merely presented to it does not impinge on this statutory purpose. These kinds of materials may be discovered and used in evidence even though they were considered by the medical review committee. This part of the statute creates an exception to materials which would otherwise be immune under the third category of items as set out above.

*Shelton,* 318 N.C. at 83-84, 347 S.E.2d at 829.

The statute at issue in *Shelton* is distinguishable from the statute involved in the present case. In contrast to G.S. § 131E-95, G.S. § 90-21.22 does not contain an "otherwise available" proviso, providing instead an unqualified privilege to information "acquired, created, or used in good faith by the Academy or a society pursuant to [G.S. § 90-21.22]." G.S. § 90-21.22 was enacted at the urging of the North Carolina Medical Malpractice Study Commission's Report and Recommendations to the 1987 General Assembly. In the Report, the Commission observed that physicians and other health care providers are more prone to addiction than other similar groups due to high stress levels and easy access to drugs. The Commission emphasized that "no evidence has been presented . . . that there is a proven correlation between professional impairment and medical malpractice. Yet it is obvious that the efforts of the profession to help itself should be supported." Report and Recommendations to the 1987 General

Assembly, p. 16. The Commission therefore recommended that the licensing boards of each of the health care professions be empowered to enter agreements with voluntary professional societies to conduct peer review of impaired physicians; this recommendation led directly to the enactment of G.S. § 90-21.22 and was followed by the creation of the PHP.

It is clear, then, that the Legislature enacted G.S. § 90-21.22 with the intent to encourage health care providers to seek treatment for their impairments. By contrast, the legislative intent underlying G.S. § 131E-95, as quoted in *Shelton, supra,* is "to encourage candor and objectivity in the internal workings of medical review committees." *Shelton,* 318 N.C. at 83, 347 S.E.2d at 829. Moreover, the stated purposes of the Hospital Licensure Act, of which G.S. § 131E-95 is a part, are " 'to establish hospital licensing requirements which promote public health, safety and welfare and to provide for the development, establishment and enforcement of basic standards for the care and treatment of patients in hospitals.' " *Id.* at 80, 347 S.E.2d at 827 (quoting N.C. Gen. Stat. § 131E-75). Thus, whereas G.S. § 90-21.22 emphasizes providing treatment to impaired health care providers, the emphasis of G.S. § 131E-95 is on encouraging the candor and objectivity required to enable medical review committees to improve the medical treatment of the public at large. Allowing discovery of documents that are "otherwise available" does not discourage the candor and objectivity of medical review committees. By contrast, allowing discovery of documents considered by the PHP, and which are otherwise available, would undoubtedly discourage physicians from seeking treatment for their impairments for fear that hospitals would deny them privileges to protect against liability.

In order to encourage health care providers to take full advantage of the newly-formed PHP, the Legislature created a broad privilege against discovery of information "acquired, created, or used in good faith by . . . a society" by omitting an "otherwise available" proviso like the one considered in *Shelton,* a case decided the year before the Commission submitted its recommendations to the Legislature. That it was the intent of the Legislature to create a broader privilege in G.S. § 90-21.22 than in peer review statutes such as the one at issue in *Shelton* is further supported by the Legislature's liberal inclusion of "otherwise available" provisos in numerous statutes governing the discoverability of information produced by various medical review committees. *See, e.g.,* N.C. Gen. Stat. § 90-48.10 (dental review committee); § 90-21.22A (medical review committee); § 122C-30 (peer

review committee of mental health facility); § 130A-45.7 (medical review committee). It is telling that there are only two statutes other than G.S. § 90-21.22 that deal with peer review organizations for impaired members of medical occupations, and neither of these statutes contains an "otherwise available" proviso. *See* N.C. Gen. Stat. § 90-48.2 (1999) (peer review for impaired dentists); N.C. Gen. Stat. § 90-85.41 (1999) (peer review for impaired pharmacists). When combined with the Legislature's frequent use of "otherwise available" provisos in medical peer review statutes, the absence of such a proviso in *all three* of the statutes dealing with peer review organizations for impaired health care providers presents clear evidence that the Legislature intended to grant a broader privilege to information produced pursuant to these statutes than to information produced pursuant to peer review statutes like the one considered in *Shelton.*

Plaintiff argues, however, that the information she seeks is not "confidential patient information and other nonpublic information," as required by subsection (e), due to Dr. Worland's participation in Alcoholics Anonymous and defendant Hospital's knowledge of his participation in the PHP. Chapter 90, Article 1D of the General Statutes fails to provide a definition of "nonpublic information." Where the General Statutes fail to provide a definition of a term, it is appropriate to turn for guidance to dictionaries. *Beechridge Dev. Co. v. Dahners*, 350 N.C. 583, 516 S.E.2d 592 (1999); *Jones v. Jones*, 52 N.C. App. 104, 278 S.E.2d 260, (1981). Webster's Third New International Dictionary defines "nonpublic" as "not public" and its definitions of "public" include "accessible to or shared by all members of the community" and "exposed to general view." Webster's Third New International Dictionary 1538, 1836 (1968). Black's Law Dictionary defines the term "public" as meaning "[o]pen to all; notorious. Common to all or many; general; open to common use." Black's Law Dictionary 1104 (5th ed. 1979). It follows that information that does not satisfy this definition constitutes "nonpublic" information. Neither defendant Hospital's possession of documents prepared by PHP nor Dr. Worland's participation in Alcoholics Anonymous can reasonably be said to render the information contained in the documents open or common to all or many. In both instances, access to information pertaining to Dr. Worland's impairment is limited to only a handful of individuals, and neither defendant Hospital nor Alcoholics Anonymous discloses its knowledge of an individual's impairment to the public. Therefore, the documents plaintiff seeks to discover contain nonpublic information.

Nor does defendant Hospital's possession of the documents relating to Dr. Worland's participation in the PHP serve to waive the documents' confidentiality. As an initial matter, we note that the record before this Court is unclear as to whether defendant Hospital obtained these documents as part of its staff credentialing process or through third party participation in the PHP's treatment efforts. In either case, however, we do not believe the confidentiality of the documents in question is waived by the Hospital's possession of them. If the Hospital obtained the documents pursuant to its staff credentialing procedures, we believe that to allow discovery of these documents would seriously undermine the clear legislative intent behind G.S. § 90-21.22. A doctor who believes that a hospital, in order to protect itself against liability, will deny him full privileges due to his participation in the PHP, may decide not to participate at all, contrary to the clear legislative intent of promoting such participation.

Documents that may have come into defendant Hospital's possession through third party participation in the PHP's treatment of Dr. Worland are expressly privileged by subsection (e), which protects any "person participating in good faith in the . . . impaired physician . . . programs of this section." We note that Chapter 90, Article 1D of the General Statutes does not provide a definition of who constitutes a "person" for the purposes of the privilege set out in G.S. § 90-21.22. Absent such a definition, however, the general rule of statutory construction holds that, absent a clear legislative intent to the contrary, "person" should be defined pursuant to G.S. § 12-3(6) (1999), which provides that the term "person" applies to "bodies politic and corporate, as well as to individuals." *Jackson v. Housing Authority of City of High Point*, 316 N.C. 259, 341 S.E.2d 523 (1986). Thus, defendant Hospital, a corporate body, qualifies as a "person" under G.S. § 90-21.22(e). To the extent the PHP sought defendant Hospital's participation in Dr. Worland's care and rehabilitation, the Hospital is a "person participating in good faith in the . . . impaired physician . . . programs of this section." Any documents in defendant Hospital's possession obtained as a third party participant in Dr. Worland's treatment program are, therefore, privileged.

Plaintiff argues, however, that defendant Hospital is not protected by the privilege set forth in G.S. § 90-21.22 because the information in its possession was not, as required by subsection (e), "acquired or developed solely in the course of participating in any agreements pursuant to [G.S. § 90-21.22]." The "agreements" referred to throughout G.S. § 90-21.22 refer to agreements entered into

between either the North Carolina Medical Board and the North Carolina Medical Society and its local medical society components or the North Carolina Academy of Physician Assistants for the purpose of conducting peer review activities. N.C. Gen. Stat. § 90-21.22(a). Since defendant Hospital is none of these organizations, it cannot enter agreements pursuant to G.S. § 90-21.22. This does not mean, however, that defendant Hospital cannot be a third party participant in any agreements reached pursuant to G.S. § 90-21.22. Thus, if defendant Hospital obtained information about Dr. Worland's participation in the PHP through third party participation, that information is privileged.

For the foregoing reasons, we conclude the documents sought by plaintiff are privileged and protected from discovery pursuant to G.S. § 90-21.22(e). Accordingly, we hold the trial court erred in denying Hospital's motion for protective order and in ordering Hospital to turn over all documents in its possession relating to Dr. Worland's participation in the PHP.

Reversed.

Chief Judge EAGLES and Judge McGEE concur.