EMILY M. ARMSTRONG, BY AND THROUGH HER GUARDIAN AD LITEM, G. BRYAN COLLINS, JR., AND SANDRA ARMSTRONG AND WILLIAM EARL ARMSTRONG, PLAINTIFFS V. JAMES A. BARNES, JR., M.D., NEWTON WOMEN'S CARE, P.A., CATAWBA MEMORIAL HOSPITAL, INC., AND CATAWBA VALLEY MEDICAL CENTER, INC., DEFENDANTS

No. COA04-300

(Filed 5 July 2005)

**1. Appeal and Error— appealability—discovery order—interlocutory—substantial right**

The appeal of a discovery order was interlocutory but involved a substantial right where a doctor who was a defendant in a medical malpractice case asserted a statutory privilege concerning his drug abuse.

**2. Medical Malpractice— discovery—physician's drug abuse—impaired physician's program**

An order should have been issued in a medical malpractice case protecting from discovery a physician's participation in an impaired physicians program. However, N.C.G.S. § 90-21.22, which protects participation in these programs, does not insulate defendant from discovery of records or information unrelated to participation in the program, including his own knowledge of his drug abuse.

**3. Medical Malpractice— discovery—physician's drug abuse—credentialing committee**

A physician who was the defendant in a medical malpractice action could not invoke N.C.G.S. § 131E-95(b) to shield himself from answering deposition questions about his own drug abuse merely because he disclosed those details during credentialing committee proceedings. However, on remand, the trial court is to determine whether other credentialing committee information sought by plaintiffs is privileged.

**4. Medical Malpractice— discovery—physician's drug abuse— credentialing committee—presence of plaintiff's counsel**

A physician who was the defendant in a medical malpractice action was not prejudiced through the improper presence of plaintiffs' attorney at a credentialing committee hearing. The record discloses that plaintiffs obtained evidence of defendant's drug abuse from separate, public records.

Appeal by defendant, James A. Barnes, Jr., M.D., from an order entered 9 October 2003 by Judge Timothy S. Kincaid in Catawba County Superior Court. Heard in the Court of Appeals 6 December 2004.

*Kirby & Holt, L.L.P., by C. Mark Holt and William B. Bystrynski, and Sigmon, Clark, Mackie, Hutton, Harvey & Ferrell, P.A., by Jeffrey T. Mackie, for plaintiffs-appellees.*

*Cranfill, Sumner & Hartzog, L.L.P., by David H. Batten and Jaye E. Bingham, for defendant-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Michael E. Weddington, for the North Carolina Physicians Health Program, Inc., amicus curiae.*

CALABRIA, Judge.

James A. Barnes, Jr., M.D., ("Dr. Barnes") appeals a discovery order that compels him to provide deposition testimony regarding the details of his history of drug abuse and grants in part his motion for a protective order pursuant to N.C. Gen. Stat. § 131E-95(b) (2003). The appeal additionally involves the trial court's failure to address the privilege afforded under N.C. Gen. Stat. § 90-21.22 (2003). We affirm in part and remand.

On 25 February 2000, Emily M. Armstrong (the "child") was born to Sandra Armstrong ("Mrs. Armstrong") and William Earl Armstrong ("Mr. Armstrong") at Catawba Memorial Hospital, Inc., now known as Catawba Valley Medical Center, Inc. ("Catawba Memorial"). Dr. Barnes, Mrs. Armstrong's obstetrician, managed her labor and delivered the child by cesarean section. Soon after birth, medical staff discovered the child had a brain injury. The child, through her guardian ad litem, Mrs. Armstrong, and Mr. Armstrong (collectively "plaintiffs") filed this action alleging that the child's brain injury resulted from the medical malpractice and negligence of Dr. Barnes, Catawba

Memorial, and Dr. Barnes' employer, Newton Women's Care, P.A., (collectively "defendants") and from the negligent oversight and retention of Dr. Barnes by Catawba Memorial and Newton Women's Care, P.A.

Dr. Barnes has a history of drug abuse, which started in 1988 during his second year of residency. At that time, he sought help and treatment through the North Carolina Physicians Health Program (the "PHP"), an organization allied with the North Carolina Medical Board (the "Board") and created to aid impaired physicians. In 1991, Dr. Barnes completed treatment through the PHP, finished his residency, and practiced obstetrics and gynecology with a group practice in Catawba County.

In December 1993, Dr. Barnes relapsed and started abusing drugs again. As a result, his employment with the group practice was terminated two months later. In March 1994, Dr. Barnes sought professional help through the PHP and voluntarily surrendered his medical license to the Board. The Board issued Dr. Barnes a temporary medical license, which required periodic re-issuance, dependant on his compliance with mandatory drug abuse monitoring through the PHP (the "PHP drug monitoring").

In December 1994, Dr. Barnes started his own practice, Newton Women's Care, P.A., then initiated the credentialing process required by Catawba Memorial to regain medical staff privileges at its facilities. As part of this process, in May 1995, the Catawba Memorial credentialing committee (the "credentialing committee") required Dr. Barnes to appear and testify before them. Two months later, the credentialing committee granted Dr. Barnes medical staff privileges at Catawba Memorial conditioned upon his participation in drug abuse monitoring.

Dr. Barnes was monitored and complied for a number of years. However, during his deposition for the malpractice action, Dr. Barnes admitted he had relapsed and started abusing drugs again in April 2000. He obtained drugs by writing prescriptions for fictitious patients and filling the prescriptions in local pharmacies. In May 2000, his drug abuse was discovered through the PHP drug monitoring. The same month, he closed his practice and voluntarily surrendered his medical license to the Board. Dr. Barnes stated he was not abusing drugs during Mrs. Armstrong's prenatal care nor during the month or on the day the child was delivered.

During the deposition, plaintiffs asked Dr. Barnes several questions concerning the details of his drug abuse and his treatment as well as the proceedings leading to his credentialing at Catawba Memorial and the PHP drug monitoring. Dr. Barnes' counsel objected to and instructed Dr. Barnes not to answer the questions. On 9 September 2003, plaintiffs filed a motion to compel Dr. Barnes to answer discovery, including deposition questions regarding his history of drug abuse and the process of his re-acquiring privileges at Catawba Memorial. Two weeks later, Dr. Barnes filed a motion for a protective order contending these matters were privileged. On 9 October 2003, the trial court entered a discovery order requiring Dr. Barnes to answer all deposition questions except the following:

> Dr. Barnes does not have to give deposition testimony about the testimony he gave to the [Catawba Memorial] medical review committee or about the evidence he presented at the medical review committee hearing. Dr. Barnes does have to answer deposition questions even if the same questions were asked at the medical review committee [hearing].

Dr. Barnes appeals asserting the discovery order fails to address his statutory privilege under N.C. Gen. Stat. § 90-21.22(e) and improperly requires the disclosure of statutorily privileged matters.

**[1]** Initially, we address the interlocutory nature of this appeal. The discovery order from which Dr. Barnes appeals is interlocutory because it "does not determine the issues but directs some further proceeding preliminary to a final decree." *McDonald v. Skeen*, 152 N.C. App. 228, 229-30, 567 S.E.2d 209, 211 (2002). Although an interlocutory order is generally not immediately appealable, such an order may be appealable "if it affects a substantial right." *Mabrey v. Smith*, 144 N.C. App. 119, 121, 548 S.E.2d 183, 185 (2001). "[W]hen . . . a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right under [N.C. Gen. Stat. §§] 1-277(a) and 7A-27(d)(1) [(2003)]." *Sharpe v. Worland*, 351 N.C. 159, 166, 522 S.E.2d 577, 581 (1999) (holding an interlocutory discovery order affects a substantial right when a privilege under N.C. Gen. Stat. § 90-21.22 is asserted and remanding the appeal to this Court for a decision on the merits) (*"Sharpe I"*). In the instant case, Dr. Barnes' assertions of statutory privilege relate directly to the matters to be disclosed under the trial court's interlocutory discovery

order. Accordingly, we hold the challenged discovery order affects a substantial right, and the instant appeal is properly before us.

[2] Dr. Barnes first asserts the trial court erred by failing to enter a protective order addressing his privilege under N.C. Gen. Stat. § 90-21.22(e), which protects information regarding participation in an impaired physicians program. We agree.

North Carolina General Statutes § 90-21.22 provides for the establishment of peer review agreements between the Board and the North Carolina Medical Society, as well as its local components. These agreements facilitate peer review activities, which include programs to aid impaired physicians, like the PHP. *Id.* Pursuant to N.C. Gen. Stat. § 90-21.22(e):

Any confidential patient information and other nonpublic information acquired, created, or used in good faith by [the North Carolina Medical Society or its local components] pursuant to this section shall remain confidential and shall not be subject to discovery or subpoena in a civil case. No person participating in good faith in the peer review or impaired physician . . . programs of this section shall be required in a civil case to disclose any information acquired or opinions, recommendations, or evaluations acquired or developed solely in the course of participating in any agreements pursuant to this section.

In the instant case, Dr. Barnes participated in the PHP. During discovery, plaintiffs posed questions concerning details of his treatment and participation. In response, Dr. Barnes moved for a protective order covering the details of his PHP treatment and participation. However, the trial court failed to enter an order pursuant to N.C. Gen. Stat. § 90-21.22(e) protecting from discovery the matters privileged under the statute. Accordingly, we hold the trial court erred by failing to enter an order in favor of Dr. Barnes protecting from discovery those matters privileged under N.C. Gen. Stat. § 90-21.22(e), and we remand.

In arguing this issue, Dr. Barnes also more specifically contends that the N.C. Gen. Stat. § 90-21.22(e) privilege extends to all details of his drug abuse. Since it is likely to recur upon remand, we address this contention. In determining whether the details of his drug abuse are privileged, we recognize the General Assembly enacted N.C. Gen. Stat. § 90-21.22 to create a broad privilege that would "encourage health care providers to seek treatment for their impairments." *Sharpe v. Worland,* 137 N.C. App. 82, 87, 527 S.E.2d 75, 78 (2000)

(interpreting N.C. Gen. Stat. § 90-21.22(e) upon remand from *Sharpe I*) ("*Sharpe II*"). In *Sharpe II*, this Court held that documents concerning the defendant doctor's participation in the PHP were privileged under N.C. Gen. Stat. § 90-21.22(e) even though they were released to the defendant hospital. *Id.*, 137 N.C. App. at 89, 527 S.E. 2d at 79-80.

Unlike the documents protected in *Sharpe II* and contrary to Dr. Barnes' contention, nothing in N.C. Gen. Stat. § 90-21.22 evinces a legislative intent to insulate a participant from disclosing the details of his drug abuse merely because he related the details of his drug abuse to a society administering an impaired physicians program during the course of his participation in that program. Such a holding would allow a participant in an impaired physician program to use the program as a shield to escape liability for his negligence by foreclosing any meaningful discovery by an injured party. This was not the intended function of this statutory privilege. Although the statute protects a physician's participation in an impaired physicians program, it does not insulate him from discovery of records or information unrelated to his participation in such a program. Accordingly, we hold Dr. Barnes may not invoke the privilege under N.C. Gen. Stat. § 90-21.22(e) to shield the details of his drug abuse from discovery to the extent his knowledge of those details exists irrespective of his participation in the PHP.

[3] Dr. Barnes next asserts, based on N.C. Gen. Stat. §§ 131E-95(b), 90-21.22A(c), and 131E-97.2 (2003), that the trial court erred by requiring him to answer deposition questions even if the same questions were asked at the credentialing committee hearing (the "hearing"). Specifically, Dr. Barnes argues the details of his drug abuse—as disclosed to the credentialing committee during the hearing—and the details of his credentialing are privileged under these three statutory provisions.

We first consider N.C. Gen. Stat. § 131E-95(b), which provides:

The proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential and not considered public records . . . and shall not be subject to discovery or introduction into evidence in any civil action against . . . a provider of professional health services which results from matters which are the subject of evaluation and review by the committee. No person who was in attendance at a meeting of the committee shall be required to testify in any

civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any findings, recommendations, evaluations, opinions, or other actions of the committee or its members. *However, information, documents, or records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee.* A member of the committee or a person who testifies before the committee may testify in a civil action but cannot be asked about his testimony before the committee or any opinions formed as a result of the committee hearings.

(Emphasis added). Under N.C. Gen. Stat. § 131E-76(5) (2003), a "medical review committee" is defined to include a committee responsible for "medical staff credentialing." Therefore, a medical staff credentialing committee, such as the one here, falls within the terms of N.C. Gen. Stat. § 131E-95(b). *Accord Shelton v. Morehead Memorial Hospital,* 318 N.C. 76, 87, 347 S.E.2d 824, 831 (1986).

In *Shelton,* our Supreme Court determined the purpose of N.C. Gen. Stat. § 131E-95(b) is to promote medical staff candor and medical review committee objectivity. *Shelton,* 318 N.C. at 83, 347 S.E.2d at 829. *See also Whisenhunt v. Zammit,* 86 N.C. App. 425, 427, 358 S.E.2d 114, 116 (1987). The statute accomplishes this purpose by providing a broad privilege that protects "a medical review committee's (1) proceedings; (2) records and materials it produces; and (3) materials it considers." *Shelton,* 318 N.C. at 83, 347 S.E.2d at 829. The statute also accomplishes a balance between this broad privilege and the interest of allowing reasonable discovery by permitting "access to information not generated by the committee itself but merely presented to it . . . ." *Id.* Therefore, the privilege referenced in the statute does not extend to "information . . . available[] from original sources other than the medical review committee . . . merely because it was presented during medical review committee proceedings[,]" and the statute's purpose is not violated by allowing materials otherwise available to "be discovered and used in evidence even though they were considered by [a] medical review committee." *Id.,* 318 N.C. at 83-84, 347 S.E.2d at 829.

In *Shelton,* the plaintiffs sought discovery from the defendant hospital's medical review committee records and information regarding the review proceedings with respect to the defendant doctor. *Id.,* 318 N.C. at 81, 347 S.E.2d at 828. Similarly, the plaintiffs in *Whisenhunt* sought discovery from a hospital of its "credentialing

records" concerning the defendant doctor. *Whisenhunt*, 86 N.C. App. at 426, 358 S.E.2d at 115. Each decision held that the information sought was not discoverable because the plain language of N.C. Gen. Stat. § 131E-95(b) extends a statutory privilege to the records produced by a medical review committee and the information concerning its proceedings. *Shelton*, 318 N.C. at 82-83, 347 S.E.2d at 829; *Whisenhunt*, 86 N.C. App. at 428, 358 S.E.2d at 116.

Dr. Barnes contends that, as the information regarding the review proceedings in *Shelton* and *Whisenhunt* was not discoverable, the information sought by plaintiffs in the instant case is not information from any original source other than the credentialing committee. However here, plaintiffs seek disclosure of the details of Dr. Barnes' drug abuse from Dr. Barnes. Unlike the hospitals in *Shelton* and *Whisenhunt*, Dr. Barnes is an original source with respect to the information sought because he created and knows the details of his drug abuse outside the privileged proceedings of the credentialing committee and the records it produced. Therefore, Dr. Barnes, as an original source, may not invoke N.C. Gen. Stat. § 131E-95(b) to shield himself from answering deposition questions regarding the details of his drug abuse merely because he disclosed those details during the credentialing committee proceedings and those details were presumably included in the committee's records.

North Carolina General Statutes § 90-21.22A(c) is functionally identical to N.C. Gen. Stat. § 131E-95(b) in its application to the instant case. Under N.C. Gen. Stat. § 90-21.22A(c):

> The proceedings of a medical review committee, the records and materials it produces and the materials it considers shall be confidential and not considered public records . . . and shall not be subject to discovery or introduction into evidence in any civil action against a provider of health care services who directly provides services and is licensed under this Chapter . . . . No person who was in attendance at a meeting of the committee shall be required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any findings, recommendations, evaluations, opinions, or other actions of the committee or its members. *However, information, documents, or records otherwise available are not immune from discovery or use in a civil action merely because they were presented during proceedings of the committee.* A member of the committee may testify in a civil action but cannot be asked about his or her testimony before

the committee or any opinions formed as a result of the committee hearings.

(Emphasis added). We also note a medical staff or credentialing committee falls within the terms of N.C. Gen. Stat. § 90-21.22A(c). *See* N.C. Gen. Stat. § 90-21.22A(a) (2003) (defining a "medical review committee" to include a committee for "provider credentialing"). Therefore, our above analysis regarding the privilege provided under N.C. Gen. Stat. § 131E-95(b) applies equally to N.C. Gen. Stat. § 90-21.22A(c), and Dr. Barnes, as an original source, may not invoke the privilege provided under N.C. Gen. Stat. § 90-21.22A(c) to shield himself from answering deposition questions concerning the details of his drug abuse.

Pursuant to N.C. Gen. Stat. § 131E-97.2:

Information acquired by a . . . hospital, or by persons acting for or on behalf of a hospital, in connection with the credentialing and peer review of persons having or applying for privileges to practice in the hospital is confidential and is not a public record . . .; *provided that information otherwise available to the public shall not become confidential merely because it was acquired by the hospital or by persons acting for or on behalf of the hospital.*

(Emphasis added). The plain language of this statute extends a privilege only to "[i]nformation acquired" by hospitals, or persons acting on their behalf, "in connection with the credentialing and peer review of persons having or applying for privileges to practice in the hospital . . . ." *Id.* As discussed above, Dr. Barnes did not acquire knowledge of the details of his drug abuse through the credentialing committee's proceedings. Nor was he acting on behalf of Catawba Memorial in connection with the credentialing committee's review. Therefore, contrary to Dr. Barnes' assertion, the privilege provided under N.C. Gen. Stat. § 131E-97.2 is inapplicable here.

Accordingly, we hold the trial court did not violate the statutory privileges provided under N.C. Gen. Stat. §§ 131E-95(b), 90-21.22A(c), or 131E-97.2 to the extent it required Dr. Barnes, an original source with respect to the details of his drug abuse, to answer all questions concerning the details of his drug abuse even if the same questions were asked at the credentialing committee hearing. However, the trial court's order does not address how the privilege applies to other aspects of the credentialing committee's proceedings, the records and materials it produced, and the materials it considered. Therefore,

ARMSTRONG v. BARNES

[171 N.C. App. 287 (2005)]

upon remand, the trial court is instructed to determine whether other information sought by plaintiffs is of a type privileged under N.C. Gen. Stat. §§ 131E-95(b) and 90-21.22A(c) and to amend its order to protect any such information.

**[4]** Dr. Barnes finally asserts the trial court erred by requiring him to answer questions even if they were asked at the credentialing committee hearing because plaintiffs' counsel was improperly allowed to attend the hearing and was improperly provided hearing documents and a partial transcript. Specifically, Dr. Barnes argues the opposing counsel's knowledge of the hearing prejudices him because (1) plaintiffs have access to documents and testimonial records that ordinarily would be unavailable through discovery and (2) the counsel's presence at the hearing makes it impossible to distinguish between information from original sources and information generated by the credentialing committee. Dr. Barnes contends this prejudice can only be prevented by forbidding any further discovery regarding his drug abuse and credentialing.

Assuming *arguendo* plaintiffs' counsel was improperly allowed to attend the hearing and was improperly provided with hearing documents, Dr. Barnes will be afforded his full statutory privilege and will be required to answer only those questions concerning the details of his drug abuse, which are not privileged. The record discloses that plaintiffs obtained evidence of Dr. Barnes' drug abuse from public records separate from their counsel's knowledge of the hearing, in particular: (1) the 31 August 1994 Board of Medical Examiners Order regarding Dr. Barnes, which stated Dr. Barnes had a history of drug abuse, had relapsed, and agreed to surrender his medical license for the issuance of a temporary license and (2) newspaper articles regarding Dr. Barnes' disciplinary history and surrender of his license. Therefore, public records would inform any plaintiff that Dr. Barnes had a drug abuse problem. Accordingly, we hold no prejudice will inure to Dr. Barnes through discovery due to opposing counsel having learned of his drug abuse not only from the public records but also presumably from the hearing.

We have carefully reviewed Dr. Barnes' remaining arguments and consider them to be without merit. For the foregoing reasons, we (1) remand to the trial court for entry of an order in favor of Dr. Barnes protecting those matters privileged under N.C. Gen. Stat. § 90-21.22(e); (2) affirm the trial court's order requiring Dr. Barnes to answer deposition questions regarding the details of his drug abuse even if the same questions were asked at the credentialing hearing;

and (3) instruct the trial court upon remand to determine whether other information sought by plaintiffs is of a type privileged under N.C. Gen. Stat. §§ 131E-95(b) and 90-21.22A(c) and to amend its order to protect any such information.

Affirmed in part and remanded.

Chief Judge MARTIN and Judge GEER concur.